[No. B014887. Second Dist., Div. Seven. Apr. 30, 1987.]

NEDRA DE LIMA, Plaintiff and Appellant, v.
MAGNESITE WATERPROOFING AND REFINISHING, Defendant
and Respondent.

**COUNSEL**

John Elson for Plaintiff and Appellant.

Flahavan, Hudson & Francis, Andrew J. Waxler and Frank M. Poturica, Jr., for Defendant and Respondent.

**OPINION**

**LILLIE, P. J.**—Plaintiff, Nedra De Lima, appeals from judgment of nonsuit entered in favor of defendant Magnesite Waterproofing and Refinishing (MWR).

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1978, at the request of Sherman Neusom, MWR replaced two outdoor staircases at an apartment building owned by Neusom, put magne-

site on the stairs and sealed the magnesite with a plastic sealer. In May 1979 Neusom had the stairs resealed by Rafael Rodriguez. On June 20, 1979 plaintiff, a tenant in Neusom's building, slipped and fell while descending one of the staircases.

Plaintiff sued Neusom, MWR and Rodriguez for damages for personal injuries sustained as a result of the fall, alleging negligence. The cause was tried before a jury. After plaintiff completed the presentation of her evidence, MWR moved for judgment of nonsuit (Code Civ. Proc., § 581c, subd. (a)) on the grounds (1) the evidence failed to establish that MWR owed plaintiff a duty of care; and (2) even if MWR owed a duty to plaintiff, the subsequent resealing of the stairs by Rodriguez was a superseding cause which relieved MWR of liability. The trial court granted the motion.[1] Judgment of nonsuit was entered in favor of MWR. This appeal ensued.

## DISCUSSION

A trial court may not grant a defendant's motion for nonsuit if the plaintiff's evidence would support a jury verdict in the plaintiff's favor. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 129 [211 Cal.Rptr. 356, 695 P.2d 653].) "In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . .' [Citation.]" (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 118 [184 Cal.Rptr. 891, 649 P.2d 224].) In an appeal from a judgment of nonsuit the reviewing court likewise is guided by the rule requiring evaluation of the evidence in the light most favorable to the plaintiff. (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 839 [206 Cal.Rptr. 136, 686 P.2d 656].) Only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit. (*Ibid.*) We summarize the evidence in accord with the stated rules.

Pursuant to written contract between MWR and Neusom, MWR replaced two outdoor staircases at an apartment building owned by Neusom, put magnesite on the stairs, and sealed the magnesite with a plastic sealer. Terry Booker, MWR's president and sole owner, told Neusom that for the purpose

---

[1]In granting MWR's motion for nonsuit the court stated: "[A]s a matter of law, the evidence does not support a finding that [MWR] was one, negligent; and two, that [MWR] could reasonably be imputed [*sic*] to realize or expect that Rodriguez would be negligent in the application of the second sealer."

of producing a nonskid surface on the steps, the application of a "combed edge" to the nose of the steps is better than the use of an adhesive safety strip. Neusom chose the combed edge, which is made by waving a whisk broom across the nose cap of the step while the magnesite is wet, creating scrawl marks in the magnesite. Although magnesite is 10 times stronger than concrete, it is very vulnerable to water and must be resealed every year with a waterproof sealer. The material used to reseal is very thick and syrupy; it fills up much of the combed edge on the steps thereby reducing the traction that the combed edge otherwise would provide. When MWR did the work for Neusom, Booker knew it is dangerous to reseal stairs without putting sand in the sealer to supply traction; he testified, "when there is water or moisture on the stairs that have been resealed without having sand added to them it's like walking on ice." Booker emphatically told Neusom the stairs would have to be resealed in a year; however, he did not inform Neusom that resealing without adding sand to the sealer would make the steps slippery, because "the time to discuss that is when he wanted to reseal, not at the time I installed it." MWR completed its work for Neusom on April 24, 1978. In accordance with its custom and practice MWR, on April 5, 1979, sent Neusom a "Friendly Reminder" card informing him that it was time for his magnesite to be refinished. Although the card contains room for a statement that sand should be added to the sealer, no such statement appears on the card. Despite MWR's practice of sending the annual reminder cards to its customers, 40 percent of them do not engage MWR to reseal their magnesite; MWR does not hear from those customers again.

In May 1979 Neusom had the stairs resealed by Rafael Rodriguez, a magnesite finisher whose work includes resealing magnesite stairs installed by others. A combed edge cannot be put on the steps when they are resealed because the sealer, unlike magnesite, cannot be brushed to create scrawl marks. Rodriguez did not ask Neusom about doing anything to make the stairs less slippery because he prefers to wait for the customer to bring up the subject. Rodriguez resealed Neusom's stairs with two coats of Hills Brothers sealer which, as Rodriguez knew from his own experience, makes the stairs slippery when they are wet. Since the spring of 1977 each can of Hills Brothers sealer has had a label recommending that users of the product sprinkle silica granules onto the first coat of the sealer "in areas where slipperiness is a concern." Rodriguez acknowledged that in May 1979, when he resealed Neusom's stairs, adding sand to the sealer was the only way to make the sealer less slippery. However, at that time Rodriguez did not know about adding sand to the sealer; he did not learn of the practice until 1981. In Rodriguez's opinion, most contractors were unaware of the need to add sand to the sealer when resealing magnesite until after 1979.

On June 20, 1979, plaintiff, a tenant in Neusom's apartment building, slipped and fell while descending one of the staircases upon which moisture

had accumulated. As a result of the fall, plaintiff sustained injuries to her back, legs, head, and right side in the area of the ribs. Following the accident Eyvind Warberg, a safety engineer, performed friction tests on the stairs as resealed by Rodriguez. The tests revealed that the stairs, when wet, have a low coefficient of friction, i.e., are slippery. Warberg testified that the striations (scrawl marks) put on the nose of the stairs, untreated by the sealer, provide "quite a bit" of friction.

Liability for negligent conduct may be imposed only where there is a duty of care owed by the defendant to the plaintiff or to a class of which plaintiff is a member. (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].) An independent contractor is under " 'a general duty imposed by law to use reasonable care to prevent damage to persons whom he may reasonably expect to be affected by his work . . . .' [Citations.]" (*Chance* v. *Lawry's, Inc.* (1962) 58 Cal.2d 368, 378 [24 Cal.Rptr. 209, 374 P.2d 185].) Liability, however, is "dependent on proof of original negligence in construction or knowledge of a dangerous condition; the contractor has no more duty than a vendor to maintain the property in a safe condition after acceptance by the owner. [Citation.] [[¶] Nor is he responsible for the negligence of another who is not in a relationship (such as agent or subcontractor . . .) giving rise to liability." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 616, p. 2897; see also *Hale* v. *Depaoli* (1948) 33 Cal.2d 228, 230-231 [201 P.2d 1, 13 A.L.R.2d 183]; *Hogan* v. *Miller* (1957) 153 Cal.App.2d 107, 111 [314 P.2d 230].) There was no evidence that MWR negligently constructed Neusom's staircases or that they were in a dangerous condition when MWR completed the work; on the contrary, plaintiff's evidence showed that the combed edges which MWR put on the stairs provided adequate friction. The stairs were made slippery when Rodriguez resealed them more than a year after MWR completed its work. Inasmuch as MWR and Rodriguez were successive contractors, and the former had no authority or opportunity to control the work of the latter, MWR is not responsible for any negligence on the part of Rodriguez in resealing the stairs.

Plaintiff insists that MWR owed plaintiff a duty to tell Neusom that sand must be added to the sealer when magnesite stairs are resealed. Duty is " 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection [against the defendant's conduct].' [Citation.]" (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912]; see also *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 805-806 [205 Cal.Rptr. 842, 685 P.2d 1193].) While the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the general rule that all persons are required to use ordinary care to

prevent others from being injured as the result of their conduct. (*Weirum v. RKO General Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) " 'Privity of contract is not necessary to establish the existence of a duty to exercise ordinary care not to injure another, but such duty may arise out of a voluntarily assumed relationship if public policy dictates the existence of such a duty.' [Citations.]" (*Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 865 [73 Cal.Rptr. 369, 447 P.2d 609].) ■ "The liability of an independent contractor to one not a party to his contract 'is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, and the policy of preventing future harm.' [Citations.]" (*Chance* v. *Lawry's, Inc., supra,* 58 Cal.2d 368, 377; see also *Stewart* v. *Cox* (1961) 55 Cal.2d 857, 863 [13 Cal.Rptr. 521, 362 P.2d 345].) ■ The determination of duty is primarily a question of law in which the foreseeability of risk to another is the principal consideration. (*Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 705 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R. 4th 1063]; *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, 46.)

■ It was foreseeable that if the stairs at Neusom's apartment house were resealed without adding sand to the sealer, and became wet, persons using the stairs would slip. In light of the response to its annual reminder cards, MWR also could have foreseen that Neusom would hire another contractor to reseal his stairs. The evidence shows, however, that it was not reasonably foreseeable persons using the stairs would slip because of a second contractor's failure to add sand to the sealer. Rodriguez knew from experience that the sealer he used to reseal Neusom's stairs is slippery when wet; he testified that when he did the work for Neusom, adding sand to the sealer was the only way to make it less slippery; the sealer which Rodriguez used to reseal had a label on its container advising the user of the need to add sand to the sealer "in areas where slipperiness is a concern."

While the stairs MWR installed at Neusom's apartment house were intended for the use of persons frequenting the premises, including Neusom's tenants, there was nothing in the work done by MWR which made the stairs dangerous. The evidence shows it was the resealing of the stairs, done by Rodriguez, which made them slippery when wet. Accordingly, there was no connection between MWR's conduct and the injury suffered by plaintiff. MWR informed Neusom of the need to have the stairs resealed every year, but had no control over Neusom's choice of a contractor to do the resealing. Closeness of the connection between MWR's conduct and plaintiff's injury is not supplied by the fact that MWR failed to warn Neusom that resealed stairs are slippery when wet unless sand is added to the sealer, inasmuch as

the contractor hired by Neusom to do the resealing knew of such danger and acknowledged that adding sand to the sealer was the only way to make it less slippery.

The policy of preventing future harm is not furthered by imposing on contractors, such as MWR, a duty to tell their customers that sand must be added to the sealer when the customers' stairs are resealed. Such a warning is "second hand" in that it is given not to the person who does the resealing, but to the person who hires him to do that work. Its effectiveness is based on the theory that a property owner, such as Neusom, can control and direct the manner in which the resealing work is done by the contractor he hires for that purpose; such theory is unsupported by the evidence. The warning which plaintiff urges should have been given would be meaningful only if directed to the person who does the resealing—a person selected by the owner of the premises, not by MWR. An intolerable burden would be placed on the initial contractor by requiring him to ascertain the identity of all subsequent contractors hired to reseal stairs on the premises of their customers, and to warn those contractors of the need to add sand to the sealer in resealing. Further, the imposition of such a duty would be meaningless inasmuch as the initial contractor has no authority or control over the performance of the work of the subsequent contractor.

Under all of the foregoing factors we conclude as a matter of law that MWR owed no duty to persons using Neusom's stairs, to advise either Neusom or contractors engaged by him to reseal his stairs that sand must be added to the sealer when resealing.

In view of this conclusion it is unnecessary to consider whether Rodriguez's conduct was a superseding cause which relieved MWR of liability for plaintiff's injuries.

### DISPOSITION

The judgment is affirmed.

Thompson, J., concurred.

JOHNSON, J.—I concur in the judgment in this case. However, I do so only on grounds there was no need for the magnesite seller and installer, Mr. Booker, to duplicate the manufacturer's warning on the can of sealer, at least in the circumstances of this case.

Contrary to the majority, I am of the opinion the seller had a duty to ensure its Magnesite customers were adequately warned of the need to use sand

when resealing the magnesite surface in the future. The seller cannot assume the customer will contract with it for these future, inevitably necessary, resealing operations. (Indeed the seller cannot assume the customer will employ *any* contractor to perform this function. The customer may choose to be a "do it yourselfer.") Thus, it is reasonably foreseeable that someone other than the original seller/installer will be applying the new sealing compound required every year to maintain safety and effectiveness of the magnesite surface. It is also reasonably foreseeable the application of the new sealant will create a dangerous condition unless sand is included in the mixture. It is not obvious to the average customer or anyone else that the failure to use sand will produce a dangerous condition. Accordingly, a seller who installs the original magnesite without itself warning the customer—or without being aware someone else is providing an adequate warning—is a contributing proximate cause of creation of the dangerous condition and any injuries that dangerous condition in turn may produce.

The above is black letter law. As Prosser and Keeton state: "A . . . seller is subject to liability for failing either to warn or adequately to warn about a risk or hazard inherent in the way a product is designed that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the product it sells." (Prosser & Keeton on Torts (5th ed. 1984) § 96, p. 685.) In this instance, it is inherent in the way magnesite is designed that the surface will have to be resealed periodically. It also is inherent in the way magnesite is designed that when the surface is renewed it will be dangerously slippery unless sand is added to the mixture. Consequently, the seller ordinarily would be liable if it failed to adequately warn about the necessity of using sand.

I am unpersuaded by the seller's contention the magnesite surface was not defective when the seller installed it and thus there was no duty to warn about how it could become dangerous if the inevitable resealing was done without sand. California courts have made it abundantly clear a duty exists to warn about foreseeable future dangers even where the original product is not defective either in design or manufacture. In *Tingey* v. *E. F. Houghton & Co.* (1947) 30 Cal.2d 97 [179 P.2d 807], for example, a manufacturer sold two different chemical salts to a customer. The customer mixed the two chemicals and they exploded. The California Supreme Court held the chemical manufacturer liable, even assuming the chemicals were safely designed and manufactured, because the manufacturer had failed to warn the chemicals were dangerous if mixed. In that case, it was foreseeable that unless warned a customer might mix the two otherwise nondangerous chemicals and thus cause injury. Likewise, in the instant case, it was inevitable the original nondangerous magnesite surface would have to be resealed and foreseeable the customer or someone he contracted with might, unless warned, fail

to mix sand in the new sealant and thus cause injury. Since foreseeability creates a duty to warn against mixing two nondangerous chemicals together, it also creates a duty to warn about the necessity of mixing two components where that is essential to insure safety. (See also *Reynolds* v. *Natural Gas Equipment, Inc.* (1960) 184 Cal.App.2d 724 [7 Cal.Rptr. 879] [seller and manufacturer of gas burner liable for failing to warn that otherwise safe burner was dangerous if air passage closed].)

In the instant case, the original seller/installer failed to warn other resealing contractors or the customer about the necessity of mixing sand in the sealant. However, the manufacturer of the resealing compound had included this warning on the packages of its product this contractor used. (Had the customer been a "do it yourselfer," this same warning would have been available for him to read and follow.)

The manufacturer's warning excused the seller from failing to issue its own warning. According to traditional proximate cause analysis, the contractor's failure to heed the manufacturer's warning constituted a "superceding independent cause" for creation of the dangerous condition and resulting injuries. In the language of foreseeability, it is not reasonably foreseeable the contractor would fail to heed the manufacturer's warning yet would have heeded a warning that the seller issued either to him or to the customer (assuming the contractor or the customer would even remember such a warning had it been given at the time of installation.) (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 628, and cases cited therein.) Thus, the warning the manufacturer did give saved the seller from its failure to warn. For that reason and that reason only, I concur in the judgment in this case.

Appellant's petition for review by the Supreme Court was denied July 22, 1987.