[No. B097531. Second Dist., Div. One. June 27, 1996.]

DAVID SANCHEZ et al., Plaintiffs and Appellants, v.
SWINERTON & WALBERG COMPANY et al., Defendants and
Respondents.

**Counsel**

Bolden & Martin, Dwight M. Bolden, Alexandra Mells and Mark V. Santa Romana for Plaintiffs and Appellants.

Knopfler & Robertson, Richard A. Capella, Colin E. Barr, Waters, McCluskey & Boehle and Fritz B. Hax for Defendants and Respondents.

**Opinion**

**SPENCER, P. J.—**

## Introduction

Plaintiffs David and Diane Sanchez appeal from a summary judgment granted in favor of defendants Swinerton & Walberg Company and Coan Construction Company, Inc. We affirm.

## STATEMENT OF FACTS

Defendant Swinerton & Walberg Company was the general contractor for construction of the Los Angeles Times Olympic Production Facility. Defendant Coan Construction Company, Inc. (Coan) was the concrete subcontractor. As subcontractor, Coan poured walkways, an entrance ramp, a stairway and a landing at the entrance of the facility. These structures were open to the air. It is undisputed that defendant Swinerton generally complied with the project's plans and specifications.[1] There is no evidence as to whether defendant Coan complied with the plans and specifications for the concrete structures. Upon completion of the project, the facility was accepted by the owner.

On February 10, 1992, roughly two years after the facility was completed, plaintiff David Sanchez went to the Olympic Production Facility. It had been raining recently. Plaintiff walked up the stairs, across the landing and through the entrance into the transportation office. After taking three or four steps inside the building, he slipped and fell. The fall resulted in serious injury.

For some time prior to plaintiff David Sanchez's accident, employees and agents of the owner had noticed that, whenever it rained, water accumulated on the landing, which sloped toward the building entrance. The water formed ponds with depths of one-half inch. The water also tended to run toward the entrance. In an effort to divert the water, sandbags were placed along the landing. Nonetheless, water sometimes migrated into the entryway. None of the owner's employees or agents informed either defendant of this problem until after plaintiff David Sanchez was injured.

## CONTENTION

Plaintiffs contend the trial court erred in granting summary judgment, in that there is a triable issue of material fact as to defendants' liability for plaintiffs' injuries. For the reasons set forth below, we disagree.

## DISCUSSION

■ Summary judgment properly is granted if there is no question of fact and the issues raised by the pleadings may be decided as a matter of law.

---

[1] It was not clear that this evidence pertained only to general compliance, as opposed to specific and detailed compliance, until plaintiffs presented their evidence in opposition to the summary judgment motion. Evidence that defendants complied with the plans and specifications made a prima facie case that they were not negligent, thus shifting the burden of proof to plaintiffs. (*Hunter* v. *Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1286 [44 Cal.Rptr.2d 335].)

(Code Civ. Proc., § 437c, subd. (c); *Mars* v. *Wedbush Morgan Securities, Inc.* (1991) 231 Cal.App.3d 1608, 1613 [283 Cal.Rptr. 238].) Inasmuch as summary judgment is a drastic procedure and should be used with caution (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134]), the moving party's papers are strictly construed, while the opposing party's papers are liberally construed (*Mars, supra,* at p. 1613; accord, *Pekarek* v. *City of San Diego* (1994) 30 Cal.App.4th 909, 912 [36 Cal.Rptr.2d 22]).

■ To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action (*Albert* v. *Southern Pacific Transportation Co.* (1994) 30 Cal.App.4th 529, 533 [35 Cal.Rptr.2d 777]; *Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674]) or show that an element of the cause of action cannot be established (*Gribin Von Dyl & Associates, Inc.* v. *Kovalsky* (1986) 185 Cal.App.3d 653, 663 [230 Cal.Rptr. 50]). (Code Civ. Proc., § 437c, subd. (o)(2).) The defendant "must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial." (*Chevron U.S.A., Inc., supra,* at p. 548.)

The moving defendant bears the burden of proving the absence of any triable issue of material fact, even though the burden of proof as to a particular issue may be on the plaintiff at trial. (*Los Angeles County-U.S.C. Medical Center* v. *Superior Court* (1984) 155 Cal.App.3d 454, 459 [202 Cal.Rptr. 222].) The defendant need only demonstrate the absence of triable issues of material fact as to those bases of liability the plaintiff has pleaded, however. (*Willard* v. *Hagemeister* (1981) 121 Cal.App.3d 406, 414 [175 Cal.Rptr. 365]; see also *American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 [241 Cal.Rptr. 466].) The opposing party may not raise an issue for the first time on appeal. (*Johanson Transportation Service* v. *Rich Pik'd Rite, Inc.* (1985) 164 Cal.App.3d 583, 588 [210 Cal.Rptr. 433].) Once the moving party has met its burden, the opposing party bears the burden of presenting evidence that there is a triable issue of fact as to any essential element of a cause of action. (*Hunter* v. *Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1286 [44 Cal.Rptr.2d 335].)

■ The court must consider presumptions and draw inferences from the facts adduced where the inference is the only reasonable one which may be drawn. (See *Unjian* v. *Berman* (1989) 208 Cal.App.3d 881, 884 [256 Cal.Rptr. 478], review den. May 23, 1989; *Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 441 [165 Cal.Rptr. 741]; *Hirsch* v. *Blish* (1977) 76 Cal.App.3d 163, 166 [142 Cal.Rptr. 646].) The court has no power in a summary proceeding to weigh one inference against

another or against other evidence, however. (*Unjian, supra,* at p. 884; *Brown v. City of Fremont* (1977) 75 Cal.App.3d 141, 145 [142 Cal.Rptr. 46].) An "assertion . . . based solely on conjecture and speculation" is insufficient to avoid summary judgment. (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 978 [243 Cal.Rptr. 277]; *Clutterham* v. *Coachmen Industries, Inc.* (1985) 169 Cal.App.3d 1223, 1227 [215 Cal.Rptr. 795].)

■ In determining the propriety of a summary judgment, the reviewing court is limited to facts shown by the evidentiary materials submitted, as well as those admitted and uncontested in the pleadings. (*Sacks* v. *FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 962 [9 Cal.Rptr.2d 306]; *McDaniel* v. *Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 5 [269 Cal.Rptr. 196].) The trial court must consider *all* evidence set forth in the parties' papers, and summary judgment is to be granted if *all* the papers submitted show there is no triable issue of material fact in the action, thereby entitling the moving party to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) On appeal, this court exercises its independent judgment in determining whether there are no triable issues of material fact and the moving party thus is entitled to judgment as a matter of law. (*Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653]; *Torres* v. *Cool Carriers A.B.* (1994) 26 Cal.App.4th 900, 904 [31 Cal.Rptr.2d 790].)

Formerly, as a general rule, after a contractor had completed a building and the owner had accepted it, the contractor was not liable to third persons for injury caused by the condition of the work done even though negligent in performing the contract. The rule first appeared in *Boswell* v. *Laird* (1857) 8 Cal. 469. The court stated the rationale for the rule as follows: "Parties for whom work contracted for is undertaken, must see to it before acceptance, that the work, as to strength and durability, and all other particulars necessary to the safety of the property and persons of third parties, is subjected to proper tests, and that it is sufficient. By acceptance and subsequent use, the owners assume to the world the responsibility of its sufficiency, and to third parties, the liability of the contractors has ceased, and their own commenced." (At p. 498.) In other words, having a duty to inspect the work and ascertain its safety before accepting it, the owner's acceptance represents it to be safe and the owner becomes liable for its safety.

An exception to the general rule, as applied to contractors who construct structures, first was enunciated in *Johnston* v. *Long* (1943) 56 Cal.App.2d 834 [133 P.2d 409] (*Johnston*): "[T]he contractor is liable if the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons, provided the contractor knows, or should know, of the dangerous situation created by him, and the owner does not know . . .

and would not discover it by reasonable inspection." (At p. 837.) This fits nicely with the general rule first articulated in *Boswell*. If an owner, fulfilling the duty of inspection, cannot discover the defect, then the owner cannot effectively represent to the world that the construction is sufficient; he lacks adequate information to do so. In articulating this exception to the general rule, the *Johnston* court relied on *Stultz v. Benson Lumber Co.* (1936) 6 Cal.2d 688 [59 P.2d 100].

In *Stultz*, the Supreme Court applied to manufacturers the rule enunciated in *MacPherson v. Buick Motor Co.* (1916) 217 N.Y. 382 [111 N.E. 1050] (*MacPherson*): " 'If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then . . . the manufacturer of this thing of danger is under a duty to make it carefully.' " (Quoted in *Kalash v. Los Angeles Ladder Co.* (1934) 1 Cal.2d 229, 231 [34 P.2d 481].) In *Stultz*, the court states the *MacPherson* rule applies where the article is dangerous "by reason of some concealed defect which was or should have been known to the manufacturer or seller." (*Stultz v. Benson Lumber Co., supra,* 6 Cal.2d at p. 691.) It makes sense that the defect and the danger attending it must be concealed, or latent, for, if it is obvious, then use of the article, knowing the danger posed by its defective condition, is an intervening cause of the plaintiff's injury. Similarly, when the owner has accepted a structure from the contractor, the owner's failure to attempt to remedy an obviously dangerous defect is an intervening cause for which the contractor is not liable.

*Hale v. Depaoli* (1948) 33 Cal.2d 228 [201 P.2d 1, 13 A.L.R.2d 183] (*Hale*) cited *Johnston* for the principle of liability enunciated therein, repudiating only the requirement that the structure be "imminently dangerous," inasmuch as that requirement does not appear in *MacPherson*. (At pp. 231-232.) In *Hale*, however, the court does not expressly articulate the *requirement* that the defect be concealed, or latent. It does, however, rely heavily on the *fact* of latency. In *Hale*, a railing on the back porch of a house collapsed when a young woman leaned against it; she received serious injuries, falling 10 feet onto a concrete walkway. The railing had not been properly nailed; it was constructed improperly. The defect was latent: the nail heads were concealed by putty and paint, so the dangerous condition of the railing was not apparent. (*Id.* at p. 229.)

In *Schifano v. Security Building Co.* (1955) 133 Cal.App.2d 70 [283 P.2d 306], the court followed *Hale*, noting the importance of whether the condition is obvious or presents a concealed danger. The court discusses that in

*Hale*, the railing was "a concealed defective condition of a highly dangerous character, for the very purpose of the rail was to prevent persons from falling to the area below." It therefore was " ' "reasonably certain to place life and limb in peril." ' " The court distinguishes *Hale*, noting that the "danger in using the waste receptacle [in that case] was an obvious one," thus absolving the contractor of liability. (At p. 73.)

The next important statement of the pertinent principles appears in *Hogan* v. *Miller* (1957) 153 Cal.App.2d 107 [314 P.2d 230] (*Hogan*). ▮ The court restated the general formulation: "It is the general rule that when a contractor's work has been completed and accepted by the owner, the contractor is not thereafter liable to third persons for injury suffered by reason of the condition of the work, even though he was negligent in carrying out the contract. [Citations.]" An exception is made, however, " '[i]f the nature of the thing is such that it is reasonably certain to place life and limb in peril when negligently made,' " for " 'it is then a thing of danger.' [Citation.] This exception relates to latent defects in the construction of the article or structure in question, the existence of which is known or reasonably should be known by the contractor." (At p. 111.)

In *Hogan*, the plaintiff was injured while opening a window in the building where she was employed. (*Hogan, supra*, 153 Cal.App.2d at p. 109.) The window was a ' "standard utility window,' " which is not normally installed in restrooms but in " 'farm type buildings.' " (*Id.* at p. 110.) The window brackets were bent inward, toward the room; they would be bent back by continual use of the window. (*Id.* at p. 111.) In holding there was no liability, the court noted that ". . . the type of window used here was so constructed as to permit the upper portion to be lifted free from the frame and to be entirely removed so that better ventilation might thus be provided. This was apparent to anyone familiar with the window. The reason the window fell out on the day of the accident was that the brackets which held the window in place when it was open had become bent due to continual use." (*Id.* at p. 113.) "[T]he nature and condition of this window were not concealed. . . . The character, structure and operation of the window were apparent to anyone using it." (*Ibid.*)

In *Dow* v. *Holly Manufacturing Co.* (1958) 49 Cal.2d 720 [321 P.2d 736], the Supreme Court reiterated the pertinent principles. (At pp. 724-725.) Again, the court does not expressly articulate the requirement that the defect be latent, but depends substantially on latency in fact, noting a contractor "is in full control of the construction and knows or should know what is being placed in the building. Indeed, what is placed there is peculiarly within his knowledge, and where, as here, it involves a defective appliance which is

covered and hidden by the walls in the course of construction, the responsibility for such defect should rest upon him . . . ." (*Id.* at pp. 725-726; see also *Montijo* v. *Swift* (1963) 219 Cal.App.2d 351, 352-353 [33 Cal.Rptr. 133] [". . . the end of the rail purportedly indicated the landing level of the stairway, which was not the fact; and the termination of the rail only slightly beyond the next to the last step combined with the angle at which the wall tile had been set created an illusion that the landing was on the plane actually occupied by the last step"].)

That the defect is latent goes to the dangerousness of the condition, for, without knowledge of the defect, one cannot guard against it. As the court noted in *Dow,* "[g]as heaters have the inherent capacity for great harm unless they are properly made and installed, especially since their defects are usually concealed from the occupant of the building and the deadly gas . . . gives no warning of its presence." (*Dow* v. *Holly Manufacturing Co., supra,* 49 Cal.2d at pp. 727-728.)

In *Stewart* v. *Cox* (1961) 55 Cal.2d 857 [13 Cal.Rptr. 521, 362 P.2d 345] (*Stewart*), the Supreme Court again restates the general principles without expressly articulating the requirement that the dangerous condition result from a latent defect. (At p. 862.) The court does, however, recognize the importance of the latency of the defect, although addressing the issue in the context of contributory negligence. The court noted that, inasmuch as the plaintiffs were not experts on the construction of pools, they would not have realized that the cracks and loss of water posed a serious danger. (*Id.* at p. 865.) That is, the defect was not patent, in that the danger was not apparent. (*Halliday* v. *Greene* (1966) 244 Cal.App.2d 482, 487 [53 Cal.Rptr. 267].)

While the court presents *Stewart* as a third party liability case, that characterization is possible only because the negligent subcontractor was not in privity of contract with the owner. The court had destroyed the privity barrier in *Dow* v. *Holly Manufacturing Co., supra,* 49 Cal.2d at page 724, however. In actuality, *Stewart* deals with a subcontractor's duty to the owner. The owner is, strictly speaking, only an intended beneficiary of the subcontractor's contract with the general contractor. Once the privity barrier has been destroyed, the subcontractor's duty to the owner should be identical to that of the general contractor. This is the essence of *Stewart.* In reaching this conclusion, the court applied the factors articulated in *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]. (*Stewart, supra,* 55 Cal.2d at p. 863.) Considered in context, then, *Stewart* does not stand for the proposition that, after the owner's acceptance of the work, a contractor is liable for any reasonably foreseeable injury, whether from a latent or a patent defect, to a third party who is not an intended, direct beneficiary of the work.

*Chance* v. *Lawry's, Inc.* (1962) 58 Cal.2d 368 [24 Cal.Rptr. 209, 374 P.2d 185] has been characterized as establishing the general proposition that a contractor owes a duty to all persons whom he reasonably may expect to be affected by his work. (At pp. 378-379.) Upon close examination, however, it is clear the proposition stated applies to persons foreseeably on the premises while the contractor is engaged in work for which the owner has contracted. It thus does not create a "new" rule establishing the contractor's third party liability after the owner has accepted the contractor's work.

None of the post-owner-acceptance third party liability cases cited above have been overruled or disapproved. Indeed, *Hale* and *Hogan* were cited recently in *De Lima* v. *Magnesite Waterproofing & Refinishing* (1987) 191 Cal.App.3d 776, 781 [236 Cal.Rptr. 519].) We have discovered no case applying the pertinent principles to a patent, as opposed to a latent, defect. ▆ It thus seems safe to conclude that latency of the defect remains essential to a contractor's negligent-construction liability after the owner has accepted the structure.

The asserted defect in this case, as revealed by plaintiffs' own answers to interrogatories, is that the defendants "constructed and poured concrete and performed labor on [the landing at the top of the entrance stairway] not confirming [*sic*] to the plans and specifications prepared by the architect for said landing. This negligence resulted in water ponding and accumulating on the landing, which water was a cause of Plaintiff David Sanchez's slip and fall accident. Furthermore, the defective construction of the landing resulted in water draining from the landing into the transportation office floor on which Mr. Sanchez fell, which was another cause of Mr. Sanchez's slip and fall accident." In other words, defective construction of the landing allowed water to pool on the landing and to drain into the transportation office, thus creating a dangerous condition. Plaintiffs do not allege, and there is no evidence, that the defective construction of the landing created any danger when water was not present.

The uncontradicted evidence shows that water formed ponds on the landing. These ponds had a depth of one-half inch. In these circumstances, the presence of standing water and the manner in which it drained into or toward the transportation office would have been obvious and apparent to any reasonably observant person, as would the danger that the water might create slippery surfaces and cause one to slip and fall. In the context of a patent defect, the word "patent" " 'refers to the patency of danger and not merely to exterior visibility.' " (*Halliday* v. *Greene, supra,* 244 Cal.App.2d at p. 487.) Here, the danger itself was patent as a matter of law; it would be discovered by the inspection an owner would make in the exercise of

ordinary care and prudence (Code Civ. Proc., § 337.1, subd. (e); *Wagner* v. *State of California* (1978) 86 Cal.App.3d 922, 927 [150 Cal.Rptr. 489]), for, as a matter of ordinary prudence, one would test whether water accumulated on the uncovered landings of stairways into buildings. The obvious nature of the defect would allow the owner and users to take steps to remedy the condition or to take precautions against injury.

In fact, it is undisputed that the dangerous condition was observed by the owner's agents, and the risk it entailed was appreciated, on several occasions preceding plaintiff David Sanchez's accident. Even if the defect initially could have been considered latent, once it was discovered, it became patent. (Cf. *A & B Painting & Drywall, Inc.* v. *Superior Court* (1994) 25 Cal.App.4th 349, 355 [30 Cal.Rptr.2d 418].) That the owner failed to take precautions until after plaintiff was injured does not change the nature of the defect.[2]

Inasmuch as the defective condition that was reasonably dangerous to life and limb was not latent, the contractor and subcontractor had no liability to a third person injured thereby after the owner's acceptance of the structure. (*Hale* v. *Depaoli, supra,* 33 Cal.2d at pp. 230-231; *Hogan, supra,* 153 Cal.App.2d at p. 111.)

Even if one assesses duty by applying the balancing factors articulated in *Biakanja* v. *Irving, supra,* 49 Cal.2d at page 649, as did the Supreme Court in *Stewart, supra,* 55 Cal.2d at page 863, one reaches the same result. The stairway and landing were built to allow access to the transportation office. The structure thus was intended, to some degree, to benefit persons like plaintiff David Sanchez, as well as the owner. A slip-and-fall injury clearly was foreseeable when the landing was wet; it is also certain that plaintiff David Sanchez was injured. These factors weigh in plaintiffs' favor, but do not in themselves establish a duty. Given the obviousness of the danger both to the owner and to users, there no longer is a close connection between defendants' conduct and plaintiff's injury. The failure to take precautions against injury and steps to remedy the problem are far more closely connected. Additionally, inasmuch as the defect was patent and, thus, the structure could have been rejected or the defect corrected by the owner, the policy against preventing future harm is not served by imposing liability

---

[2]Plaintiffs assert prejudice from the trial court's purported consideration of a letter to which it had sustained objections. The letter in question was written by the owner to the contractor *after* plaintiff's injury to apprise the contractor of the defect. It thus provided no evidence of anyone's knowledge *before* the injury, and properly was excluded as irrelevant. When one reads the trial court's minute order granting summary judgment and considers context, it is clear the court did not use the contents of the letter in reaching its decision, but merely noted that, had the letter been considered, it would not have been evidence of the contractor's actual prior knowledge of the defect.

on the contractor. These factors weigh in favor of defendants and, given their great importance, they outweigh the factors favoring plaintiffs. Accordingly, under this analysis, also, the contractors owed no duty to plaintiffs. In light of this conclusion, it is unnecessary to consider plaintiff's additional arguments.

The judgment is affirmed.

Ortega, J., and Vogel (Miriam A.), J., concurred.