Filed 8/24/22  Riahi v. The Regents of the U. of Cal. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RAJA RIAHI,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>     Defendant and Respondent. | A163399<br><br>(Alameda County<br>Super. Ct. No. RG18914082) |

Plaintiff and appellant Raja Riahi appeals an order granting the motion for summary judgment of defendant and respondent The Regents of the University of California ("Regents").  The trial court held that Riahi's sole cause of action for dangerous condition of public property fails because the undisputed material facts show that Regents did not create nor have notice of the dangerous condition under Government Code section 835.[1]  We agree and affirm.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

## I. BACKGROUND

### A. Facts

The following facts are taken from Regents' separate statement of undisputed facts filed in support of its motion for summary judgment, and Riahi's responses. In 2014, Regents, a public entity, entered into a ground lease with Partnership for Haas Preeminence (PHP)[2] to plan, design, and construct Chou Hall, a new academic building for Haas School of Business. After construction was completed, the lease was terminated and the building was transferred back to Regents on or around January 17, 2018.

PHP contracted with defendant Vance Brown, Inc. (Vance Brown), a general contractor, to construct Chou Hall. Vance Brown in turn, entered into a subcontract with defendant Peninsulators, Inc. (Peninsulators) to install the window coverings at Chou Hall. Peninsulators then contracted with defendant Mechoshade Systems, LLC (Mechoshade) to supply the window coverings. Regents had no role in the construction of Chou Hall.

Regents' only involvement during construction was to schedule and coordinate the work performed by Vance Brown and its subcontractors. Regents performed a rough inspection of the framing, electrical, plumbing, and mechanical systems after they were installed but before the walls and ceiling were put in, as well as a final inspection of these systems after all work was completed. A final inspection was required before an occupancy permit could be issued. There was also a separate inspection by the university's Fire Marshall. Regents did not perform any other formal inspections of Chou Hall. Regents conducted informal walk-throughs to

---

[2] PHP is a nonprofit organization that was formed to raise funds for the construction of Chou Hall.

check on the progression of work and to check for safety concerns such as crinkled floor mats that could cause someone to trip.

The third floor of Chou Hall opened for temporary occupancy in July 2017. On February 4, 2018, Riahi was studying in one of the rooms on the third floor. He claims that when he went to pull the window shade cord to lower the window shade, the metal cover on the window (the fascia), fell from a height of about 12 feet and struck him.

A few days after the incident, Joe Buch, a project manager from Peninsulators, went to the room to investigate why the fascia fell. He picked up the fascia from the floor, tried to reinstall it in its brackets, and found that it did not fit snugly. He then measured the fascia and discovered it had been cut 1/16 to 1/8 of an inch too short. He also used a tool to check one of the ends of the fascia and found that it had not been cut square. It was not apparent from his initial visual inspection that the fascia had been cut too short. Regents was not aware of this defect or any incidents of a fascia falling at Chou Hall prior to the subject incident.

B. <u>Motion for Summary Judgment</u>

Riahi filed a complaint that alleged a single cause of action against Regents for dangerous condition of public property under section 835.[3] Regents filed a motion for summary judgment on the grounds that Riahi could not establish a claim under section 835 because Regents did not create the dangerous condition and did not have actual or constructive notice of it. Regents argued that it was undisputed that it was not involved in constructing Chou Hall and that it did not have actual notice of the defective fascia prior to the incident. Regents further argued that constructive notice

---

[3] The complaint also included a second cause of action for negligence against Vance Brown, Peninsulators, and Mechoshade.

could not be imputed to it because the defective fascia was not an obvious condition such that Regents should have discovered it and realized its danger.

In his opposition, Riahi conceded that he had no evidence that Regents created the defect in the fascia or had actual notice of the defect. However, Riahi argued that constructive notice should be imputed to Regents because Regents did not perform an adequate or reasonable inspection that would have revealed the defect and provided Regents time to fix it prior to Riahi's accident. Riahi further argued that whether an inspection was reasonable was a question of fact that should be left to the jury to decide.

In support of his opposition, Riahi submitted a declaration of his building safety expert, Zachary Moore. In his declaration, Moore opined that the fascia created an unsafe condition and that Regents knew or should have known of this unsafe condition. Moore further stated that the defect in the fascia could be visually observed, and that Regents would have noticed this defect had a reasonable and adequate inspection been performed. Regents filed objections to Moore's declaration on the grounds that the statements included were irrelevant, lacked foundation, and were based on speculation.

C. <u>The Trial Court's Ruling</u>

Following oral argument, the trial court granted Regents' motion. The court held that the undisputed material facts show that Regents did not create or have actual notice of the dangerous condition. The court further held that the undisputed material facts show that Regents did not have constructive notice of the dangerous condition under section 835.2. The court stated, "The window facia was 13 feet above the floor. The variance from the specifications was not visible to the eye to an observer on the floor. [Citation.] The fascia were installed by Peninsulator, and Peninsulator

4

employee Buch testified that the variance from the specifications was not visible to the eye from up close."

The court further held that there was no evidence "of any prior incident involving a defective window fascia that would have put the Regents on notice of the need to look for a defect." The trial court denied Regents' objections to Moore's declaration.[4] The court noted however, that "Moore's testimony that someone should have inspected the window more closely does not create a triable issue of material fact whether the Regents had a duty to inspect the window more closely."

Judgment was entered in favor of Regents, and Riahi now appeals.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment is proper "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant meets this burden by showing that plaintiff "has not established, and cannot reasonably expect to establish" an essential element of his claim. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

We review a grant of summary judgment de novo, which means we

---

[4] In its responding brief, Regents renews its objections to Moore's declaration. We need not reach the merits of these objections since we are affirming the judgment. Even assuming the declaration is admissible, summary judgment is still warranted as the declaration creates no triable issue of material fact.

5

"decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) In deciding whether a material issue of fact exists for trial, we "consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence." (Code Civ. Proc., § 437c, subd. (c).) We view the evidence in the light most favorable to the plaintiff, as the nonmoving party. (*Saelzler v. Advanced Group 400, supra*, 25 Cal.4th at p. 768.)

B. Liability for Dangerous Condition of Public Property

"A public entity is not liable for injuries except as provided by statute, and Government section 835 sets out the exclusive conditions under which a public entity may be held liable for injuries caused by a dangerous condition of property." (*Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 302 (*Nishihama*); § 815.)

To establish liability, a plaintiff must show that "the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) [a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) [t]he public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835.)

C. New Argument That Regents Created the Dangerous Condition

In his opposition to Regents' motion for summary judgment, Riahi

conceded he had no evidence that Regents created or had actual notice of the dangerous condition. Riahi now argues that there is a triable issue as to whether Regents created the dangerous condition because by accepting the completed building, Regents "assumed responsibility for the creation or existence of any dangerous conditions." This is otherwise known as the "completed and accepted" doctrine that often applies to liability for work completed by contractors.[5]

First, though we are "bound to determine whether defendants met their threshold summary judgment burden independently from the moving and opposing papers, we are not obliged to consider arguments or theories, including assertions as to deficiencies in defendants' evidence, that were not advanced by plaintiffs in the trial court." (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.) "A party is not permitted to change his position and adopt a new and different theory on appeal." (*Ernst v Searle* (1933) 218 Cal. 233, 240–241.)

In his written opposition to Regents' motion below, Riahi failed to raise this new theory that Regents created the dangerous condition. Arguably, Riahi failed to preserve this issue on appeal. The trial court's order notes that at oral argument, Riahi cited to *Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962 for the first time. The court then summarized why this case was inapposite since it involved a defendant architect's affirmative

---

[5] Originally, this doctrine held that "after a contractor had completed a building and the owner had accepted it, the contractor was not liable to third persons for injury caused by the condition of the work done even though negligent in performing the contract." (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1466.) "In other words, having a duty to inspect the work and ascertain its safety before accepting it, the owner's acceptance represents it to be safe and the owner becomes liable for its safety." (*Id.*)

7

defense of the " 'completed and accepted' " doctrine and not the application of section 835.2. Even if we assume that Riahi adequately raised the issue before the trial court, it does not create a triable issue of material fact.[6]

A public entity's liability for injuries is governed by statute, and section 835 "sets out the exclusive conditions under which a public entity may be held liable for injuries caused by a dangerous condition of property." (*Nishihama, supra*, 93 Cal.App.4th at p. 302.) Outside of section 835, a public entity cannot be held liable for the ordinary negligence of its employees. (*Id*.) Here, Riahi argues that Regents is liable under section 835, subdivision (a) because it assumed responsibility for the creation of all dangerous conditions by accepting the completed building. Riahi cites to no authority to support such an expansive interpretation of section 835.

In rejecting the doctrine of res ipsa loquitur in the context of section 835, our high court stated that section 835, subdivision (a) "requires the plaintiff to show that an employee of the public entity 'created' the dangerous condition; in view of the legislative history … the term 'created' must be defined as the sort of involvement by an employee that would justify a presumption of notice on the entity's part." (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 836.) The same holds true here. The "completed and accepted" doctrine is inapplicable as Riahi must show that an employee of Regents was involved in creating the defective fascia under section 835, subdivision (a). Riahi fails to do so and *conceded* that Regents was not involved in the construction of Chou Hall.

---

[6] The hearing on the motion was not reported, so we do not know what new arguments, if any, Riahi made at oral argument besides his citation to *Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962.

D.  The Condition Was Not Obvious to Support Constructive Notice

"A public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (§ 835.2, subd. (b).)  "Whether the dangerous condition was obvious and whether it existed for a sufficient period of time are threshold elements to establish a claim of constructive notice.  [Citation.]  Where the plaintiff fails to present direct or circumstantial evidence as to either element, his claim is deficient as a matter of law." (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 317 (*Heskel*).)

"A defect is not obvious just because it is *visible*." (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 520 (*Martinez*).)  The defect must be so obvious that the public entity should have discovered both "the condition *and* its dangerous character." (§ 835.2, subd. (b), italics added.) A defect is also "not obvious just because it is nontrivial." (*Martinez, supra,* 71 Cal.App.5th at p. 520.)  Otherwise, "the constructive notice element would be automatically satisfied in every instance where that dangerous condition preexisted the accident and thus would effectively write the negligence element out of the statute." (*Ibid.*)

"[W]hether a nontrivial defect is sufficiently obvious, conspicuous, and notorious that a public entity should be charged with knowledge of the defect for its failure to discover it depends upon 'all [of] the existing circumstances.'" (*Martinez, supra,* 71 Cal.App.5th at p. 521).  These circumstances include the nature and extent of the defect, its location, and

9

the length of time it has existed.  (*Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 367.)

For example, in *Heskel, supra*, 227 Cal.App.4th at p. 315, the court affirmed summary judgment in favor of the city and found that a protruding base of a metal post on a sidewalk that plaintiff tripped over was not an obvious condition to impute constructive notice to the city under section 835.2, subdivision (b).  This was despite evidence put forth by plaintiff that included pictures of the post and a declaration by a third party who tripped over the post more than a year prior to plaintiff's incident.  (*Id*. at pp. 316.)  The court held that although plaintiff's evidence "suggests that the condition was above ground and visible, it does not demonstrate that it was of a substantial size or so visible from public thoroughfares that the City, in the exercise of due care, should have become aware of it and taken corrective action to cure it."  (*Id*. at p. 321.)

Here, Regents presented substantial evidence that the defective fascia was not an obvious condition.  First, the fascia was approximately 12 to 14 feet above the floor and therefore not visible to anyone walking around in the area.  Second, the fact that the fascia was 1/8 to 1/16 of an inch short and cut at an angle are not conditions that are obvious by any means or even visible, unlike say a protruding metal post on the sidewalk.  Buch, Peninsulators' project manager, testified at his deposition that he could not tell from his initial inspection of the fascia that it was cut short.  It was only after he measured the fascia that he discovered it had been cut short and at a slight angle.  Third, there had been no prior incidents of a fascia falling in the building that would have alerted Regents to this defect and its danger.

Riahi does not brief the issue of whether the defective fascia was obvious but argues that Regents did not have a reasonably adequate

10

inspection system in place to discover the defective fascia. Although this goes to whether Regents exercised due care under section 835.2, subdivision (b)(1), this issue is irrelevant because Riahi fails to meet the threshold element that the condition was sufficiently obvious. (*Heskel, supra,* 227 Cal.App.4th at p. 317.) "[I]n determining whether there is constructive notice, the method of inspection has been held to be secondary. The primary and indispensable element of constructive notice is a showing that the *obvious condition existed a sufficient period of time before the accident.*" (*State v. Superior Court* (1968) 263 Cal.App.2d 396, 400.) Riahi's failure to make such a showing entitles Regents to judgment as a matter of law.[7]

### III. DISPOSITION

The order granting Regents' motion for summary judgment is affirmed.

---

[7] Although Riahi's opposition to the motion below argued that the dangerous condition existed for a sufficient period of time for Regents to have fixed it prior to the incident, we need not discuss the issue since the condition was not obvious.

11

_____

WISEMAN, J. *

We concur.

_____

SIMONS, Acting P.J.

_____

BURNS, J.

*Riahi v. Regents of the University of California* / A163399

_____

    * Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.