Filed 6/5/14  Nubani v. County of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BECKER H. NUBANI, Individually and as Successor in Interest, etc. et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF LOS ANGELES,<br><br>Defendant and Respondent. | B246929<br><br>(Los Angeles County<br>Super. Ct. Nos. MC022349 &<br>MC022360) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Brian C. Yep, Judge.  Affirmed.

Steven B. Stevens and Joseph Martin Barrett, for Plaintiff and Appellants.

Collins Collins Muir & Stewart, Samuel J. Muir, Melinda W. Ebelhar, Christie Bodnar Swiss, Kevin J. Engelien, Erin I. Reed and David B. Shapiro, for Defendant and Respondent.

\* \* \* \* \* \*

The trial court granted summary judgment in favor of defendant and respondent the County of Los Angeles (County) on the complaints filed by plaintiffs and appellants Becker H. and Basimah Nubani, individually and as successor in interest to Stephen Nubani; Jose de Jesus and Angie Alvarez, individually and as successor in interest to Araceli Alvarez; Michael Jernigan and Bettina Wong, individually and as successor in interest to Rylan Jernigan; Julio Cesar and Sylvia Chunga, individually and as successor in interest to Cesar Chunga; and Kirk Eugene Pitts. The complaint stemmed from a traffic accident that occurred when Stephen Nubani failed to stop at a stop sign and collided with another vehicle. Appellants alleged that the County should be held liable because the intersection was a dangerous condition of public property. The trial court ruled the undisputed evidence established the intersection was not a dangerous condition as a matter of law.

We affirm. The County met its burden to show appellants could not establish the intersection was a dangerous condition of public property at the time of the collision.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Accident.*

70th Street East and Avenue N are straight, two-lane, undivided roadways that intersect in Palmdale (intersection). Since 1962, a two-way stop sign has required vehicles traveling on 70th Street East to stop at the intersection; there is no stop sign for vehicles traveling on Avenue N. There is an overhead streetlight at the northwest corner of the intersection and, approximately 700 feet south of the intersection, a "stop ahead" sign and corresponding "stop ahead" roadway marking notify motorists on 70th Street East as they approach the intersection and stop sign. Though the limit line and "stop" painted on the pavement at the intersection were visible and in "acceptable condition," they were faint and their retroreflective qualities had dissipated by September 2009. In 2005, the County added a "cross traffic does not stop" sign on the same pole as the stop sign, but it was missing in photographs of the intersection taken in September 2009.

2

On September 26, 2009, at approximately 10:15 p.m., Stephen Nubani was driving northbound on 70th Street East with three passengers in his vehicle. After he failed to stop at the stop sign at the intersection, his vehicle collided with the vehicle driven by appellant Kirk Pitts, who had been traveling eastbound on Avenue N (accident). Nubani and all passengers suffered fatal injuries, and Pitts suffered physical injuries. That night, the weather was clear, the stop sign and the "stop ahead" sign were unobstructed, and the streetlight at the intersection was functioning.

There were no skid marks on 70th Street East or any other indication that Nubani had attempted to stop at the intersection The driver of a vehicle following Nubani did not see brake lights on Nubani's vehicle until it was in the middle of the intersection, at about the moment of the accident. Officers concluded that Nubani's failure to stop at the stop sign was the cause of the accident.

It is the County's policy and practice to refresh pavement markings every 18 months. County records showed that, in accordance with this policy, the limit line and stop markings on the pavement at the intersection were repainted approximately one year prior to September 2009. The County's road maintenance division was also responsible for conducting monthly street inspections, which included checking for pavement markings, damaged or missing critical signs and vegetative overgrowth causing sight-line impairment. No report of any damaged or missing sign, and no report of any pavement marking needing attention or overgrown vegetation were made during the County's September or October 2009 inspection of the intersection. More specifically, the County's road maintenance division performed an inspection of the intersection on September 18, 2009, and the inspection yielded no report indicating that the intersection was in a deficient condition. Pursuant to a prior June 2009 work order, the intersection was repaved in October 2009 and new pavement markings were drawn at that time.

In the five years preceding the accident, there had been a total of 11 collisions at the intersection—one involving a fatality and six involving injuries. Five of those collisions involved vehicles traveling northbound on 70th Street East and eastbound on Avenue N. On the basis of records from the California Department of Transportation

3

concerning traffic levels, the 11 collisions represent a collision rate of 1.05 per million; the statewide average collision rate at rural intersections governed by a two-way stop is 0.33 per million.

### *Pleadings and Summary Judgment.*

Appellants filed two separate complaints against the County, with Pitts filing his own complaint and the parents of Nubani and his passengers filing another, and the actions were consolidated.[1] The complaints generally alleged that the intersection presented a dangerous condition of public property because it "lacked proper signage, warnings, lighting, limit lines and sight lines," and motorists were unable to see each other approaching due to overgrown vegetation. More specifically, appellants alleged a dangerous condition was created by the failure to install a four-way stop at the intersection, an inadequate "stop ahead" sign, faded and worn limit lines, and obstructive vegetative overgrowth. They further alleged that the County knew or should have known of the dangerous condition and that such condition was the proximate cause of the accident. The County answered, generally denying the allegations and asserting multiple affirmative defenses.

The County moved for summary judgment under alternative theories, asserting that the undisputed evidence established there was no dangerous condition within the meaning of Government Code[2] section 835; even if there were a triable issue as to dangerous condition, the County further asserted it was entitled to immunity as a matter of law under sections 830.2, 830.4, 830.6 and/or 830.8, and that any dangerous condition was not the proximate cause of the accident. In support of the motion it submitted declarations from a County road maintenance engineer, an expert civil and traffic engineer, County Department of Public Works engineers; reports from those engineers; multiple deposition excerpts; and an accident report.

---

[1] Appellants also named the City of Los Angeles as a defendant but there is no indication in the record that it has ever appeared in the action.
[2] Unless otherwise indicated, all further statutory references are to the Government Code.

Appellants opposed the motion. They argued there were triable issues of fact concerning the existence of a dangerous condition and regarding the application of statutory immunity. More specifically, they argued the intersection's traffic control devices were inadequate; the limit line and "stop" markings on the pavement preceding the stop sign had significantly degraded; and a "cross traffic does not stop" sign was missing from the intersection. In view of these deficiencies, they asserted that the proximate cause of the accident was a question of fact. They further argued that these deficiencies resulted from the County's inadequate inspection and maintenance. They also offered evidence designed to show the intersection had a higher traffic collision rate than similar intersections. Appellants submitted deposition excerpts; accident reports; declarations from a forensic consultant, a forensic engineer and a civil engineer; and a copy of the California Manual on Uniform Traffic Control Devices (CMUTCD). In addition, they filed evidentiary objections to portions of the declarations offered by the County.

The County replied, asserting that appellants' evidence failed to raise a triable issue regarding dangerous condition, immunity or causation. It emphasized that the pavement markings and sign appellants contended were missing and/or inadequate were supplemental rather than mandatory, and thus their omission failed to create a dangerous condition or overcome immunity. It also submitted portions of the CMUTCD and additional deposition excerpts. The County filed evidentiary objections and responded to appellants' objections.

Following an August 2012 hearing, the trial court took the matter under submission and subsequently issued a minute order granting the motion. Specifying the evidence in the County's separate statement of undisputed facts, it ruled there was no triable issue of fact concerning the dangerous condition allegations. It did not rule on the evidentiary objections. Judgment was entered in favor of the County and this appeal followed.

5

**DISUCSSION**

Appellants maintain there were triable issues of fact as to whether the intersection constituted a dangerous condition, whether the County was entitled to statutory immunity and whether the condition of the intersection was a substantial factor in causing the accident. We conclude the County met its burden to show it was entitled to judgment as a matter of law.

**I.      Summary Judgment Principles and Standard of Review.**

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) To meet this burden, the defendant must show one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar v. Atlantic Richfield Co., supra,* at p. 850; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1485.) Once the moving party's burden is met, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261; *Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465.)

"'In order to avert summary judgment the plaintiff must produce *substantial* responsive evidence sufficient to establish the existence of a triable issue of material fact on the issues raised by the plaintiff's causes of action.' [Citation.]" (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 417.) The plaintiff may not rely upon the mere allegations or denials of its pleadings to show the existence of a triable issue of fact; rather, "[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . ." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850, fn. omitted; see also Code Civ. Proc., § 437c, subd. (o)(2).) Moreover, "[a] party cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]" (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102

6

Cal.App.4th 977, 981; accord, *Sanchez v. Swinerton & Walberg Co., supra,* 47 Cal.App.4th at p. 1466 ["An 'assertion . . . based solely on conjecture and speculation' is insufficient to avoid summary judgment"].)

We review a grant of summary judgment de novo, "considering 'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.' [Citation.]" (*Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 612.) "In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the superior court. We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue." (*Silva v. Lucky Stores, Inc., supra,* 65 Cal.App.4th at p. 261.) "On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.]" (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)

"We will affirm an order granting summary judgment . . . if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons. [Citations.]" (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120; see also *Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1836 ["If summary judgment was properly granted on any ground, we must affirm regardless of whether the court's reasoning was correct"].)

## II.    The Trial Court Properly Granted Summary Judgment.

### A.    *Liability for a Dangerous Condition is Governed by Statute.*

A governmental entity is not liable for an injury unless liability is specifically permitted by a statute. (§ 815.) Section 835 provides that a public entity may be held liable for a dangerous condition of public property under certain circumstances. (See *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1126; *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 68.) To establish such liability, a plaintiff must

7

prove that "the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835.)

"'Dangerous condition' is statutorily defined as a 'condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.' (Gov. Code, § 830, subd. (a).) Thus, to sufficiently prove a 'dangerous condition' within the meaning of section 830, a plaintiff must establish that the condition of the public property created a substantial risk of injury when 'used with due care' in a foreseeable manner." (*Fredette v. City of Long Beach* (1986) 187 Cal.App.3d 122, 130, italics and fn. omitted.) Stated another way, "[a]ny property can be dangerous if used in a sufficiently abnormal manner; a public entity is required only to make its property safe for reasonably foreseeable careful use. [Citation.]" (*Matthews v. City of Cerritos* (1992) 2 Cal.App.4th 1380, 1384.)

Whether a given set of facts and circumstances creates a dangerous condition is frequently a question of fact, but it may be resolved as a question of law if reasonable minds can come to but one conclusion. (§ 830.2; *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810; *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347.) "Section 830.2 . . . sets forth the criteria for a court to conclude as a matter of law that a condition is not dangerous within the meaning of section 830: 'A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person

8

would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.'" (*Peterson v. San Francisco Community College Dist., supra,* 36 Cal.3d at p. 810, fn. 6.) "'[I]t is for the court to determine whether, as a matter of law, a given defect is not dangerous. This is to guarantee that cities do not become insurers against the injuries arising from trivial defects.' [Citation.]" (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704.)

**B.** **The Undisputed Evidence Established the Intersection Did Not Create a Substantial Risk of Injury When Used with Due Care.**

"'[A] claim alleging a dangerous condition may not rely on generalized allegations [citation] but must specify in what manner the condition constituted a dangerous condition.' [Citation.] A plaintiff's allegations, and ultimately the evidence, must establish a *physical* deficiency in the property itself. [Citations.] A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users. [Citation.]" (*Cerna v. City of Oakland, supra,* 161 Cal.App.4th at pp. 1347-1348.)

Here, appellants alleged the intersection was a dangerous condition because it lacked proper safety measures and warnings. They alleged the absence of a four-way stop sign and fully reflective stop and limit line pavement markings, an inadequate "stop ahead" sign, a missing "cross traffic does not stop" sign and vegetative overgrowth contributed to the intersection's dangerousness.

In support of its summary judgment motion, the County offered undisputed evidence establishing the intersection was controlled by a stop sign, a "stop ahead" sign and accompanying "stop ahead" roadway marking were approximately 700 feet south of the intersection, a functioning streetlight illuminated the intersection, there were no obstructions to the stop sign's visibility at the time of the accident, and drivers stopped at the stop sign had clear sight lines to oncoming traffic. The evidence further established

9

that the pavement markings had been repainted approximately one year before the accident, and a County inspection eight days before the accident did not generate a report indicating that any aspect of the intersection was deficient. The evidence showed that between 2005 and 2010, approximately 5,000,000 cars entered the intersection, and five similar collisions involving northbound motorists on 70th Street East and eastbound motorists on Avenue N occurred.

We conclude the County met its threshold burden to negate an essential element necessary to show the intersection was a dangerous condition as defined by statute— namely, it established the intersection did not create a substantial risk of injury when used with due care in a reasonably foreseeable manner. (§ 830, subd. (a); see also § 830.2; *Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 481 [in order to permit a jury to find a condition is dangerous, there must be "'evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved'"].) Evidence of appropriate signage and lighting, as well as clear sight lines, was akin to that offered in other cases finding a public entity met its burden to show there was no dangerous condition as a matter of law. (E.g., *Mixon v. State* (2012) 207 Cal.App.4th 124, 131-132 [intersection where pedestrians were struck that was at the end of state route and beginning of a street not a dangerous condition as a matter of law, as warning signs preceded the intersection and there were white crosswalk markings on the pavement]; *Salas v. California Dept. of Transp.* (2011) 198 Cal.App.4th 1058, 1070-1071 [intersection where pedestrian was struck not a dangerous condition as a matter of law, given evidence showing marking, signage and clear sight lines]; *Cerna v. City of Oakland, supra,* 161 Cal.App.4th at pp. 1351-1352 [intersection where pedestrians struck not a dangerous condition as a matter of law, as the additional features the plaintiffs claimed the intersection should have contained were of a minor, trivial or insignificant nature].) The County established that there was no substantial risk of injury when motorists exercised due care at the intersection in a reasonably foreseeable manner. (§ 830, subd. (a).) As we recognized in *Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1196, "any property can be dangerous if used in a sufficiently

10

improper manner. For this reason, a public entity is only required to provide roads that are safe for reasonably foreseeable careful use. [Citation.]" We expressly determined in *Chowdhury* it is not foreseeable that "a motorist will recklessly disobey traffic laws and speed through an intersection . . . ." (*Id.* at p. 1195; accord, *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1190 ["the only risk of harm was from a motorist who failed to exercise due care by not obeying the Vehicle Code provisions"]; *Fuller v. State of California* (1975) 51 Cal.App.3d 926, 940 ["'a public entity should not be liable for injuries resulting from the use of a highway—safe for use at 65—at 90 miles an hour, even though it may be foreseeable that persons will drive that fast'"].)[3]

We agree with the trial court that appellants failed to raise a triable issue of fact as to whether the intersection created a substantial risk of injury when used with due care in a foreseeable manner. (See *Davis v. City of Pasadena, supra,* 42 Cal.App.4th at p. 705 ["the fact that a witness can be found to opine that such a condition constitutes a significant risk and a dangerous condition does not eliminate this court's statutory task,

---

[3]     We find no merit to appellants' argument that the County improperly relied on Nubani's failure to stop at the stop sign as a means of showing the intersection was not dangerous. We acknowledge that "[s]o long as a plaintiff-user can establish a condition of the property creates a substantial risk to any foreseeable user of the public property who uses it with due care, he has successfully alleged the existence of a dangerous condition regardless of his personal lack of due care." (*Alexander v. State of California ex rel. Dept. of Transportation* (1984) 159 Cal.App.3d 890, 901.) Nonetheless, Nubani's conduct is relevant to emphasize that the County's liability for a dangerous condition is limited to those foreseeable users who exercise due care. As explained in *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1466: "'A condition is not dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property with due care. Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons.' [Citation.] '[A]ny property can be dangerous if used in a sufficiently abnormal manner.' [Citation.] A public entity is required only to make its property safe for 'reasonably foreseeable careful use.' [Citation.]" Any extension of this principle would result in public entities becoming the insurers of motorists using public streets. (*Mittenhuber v. City of Redondo Beach* (1983) 142 Cal.App.3d 1, 6.)

11

pursuant to section 830.2, of independently evaluating the circumstances"].)  On summary judgment, appellants abandoned their allegations that the lack of a four-way stop and the presence of vegetative overgrowth rendered the intersection dangerous, and instead focused on evidence that the "cross-traffic does not stop" sign was missing, the limit line and "stop" pavement markings were faded, and the accident rate was higher than the statewide average for similar intersections.  These features—either alone or in combination—did not create a triable issue.

First, appellants' evidence showed that after a 2005 collision, the County installed a yellow and black "cross-traffic does not stop" sign on the stop sign pole on 70th Street East—a sign that is not a mandatory traffic control device.  Photographs of the intersection showed that the sign was missing at or about the time of the accident.  Appellants argue that, without this sign, motorists had inadequate information reinforcing the need to stop at the stop sign.  A similar argument was rejected in *Cerna v. City of Oakland, supra,* 161 Cal.App.4th at pages 1350 to 1351, where the plaintiffs contended a crosswalk near a school was dangerous because it was painted white instead of yellow.  As the court aptly noted, "drivers of vehicles are required to yield the right-of-way to pedestrians in any marked crosswalk, "'whether they are painted white or yellow.'"  (*Id.* at p. 1351.)  Likewise, a motorist is required to stop at a stop sign, regardless of whether he or she is aware that cross traffic does not stop.  Thus, the omission of a "cross traffic does not stop" sign "was 'of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no person would conclude that the condition created a substantial risk of injury.'  [Citation.]"  (*Ibid.*; accord, *Belcher v. City and County of San Francisco* (1945) 69 Cal.App.2d 457, 463 ["liability is not to be fastened upon a municipality merely because it may appear that certain property, in nowise dangerous either in its construction or intended use, could possibly be made safer by other means"].)

We find no similarity between the lack of a "cross traffic does not stop" sign and the circumstances in the two cases relied on by appellants.  In *Morris v. State of California* (1979) 89 Cal.App.3d 962, 964, the defendant motorist drove through an unrepaired median barrier and collided with the plaintiffs' vehicle on the opposite side of

12

the freeway.  The appellate court held that the plaintiffs alleged a viable dangerous condition claim, explaining that the unrepaired median barrier was located on a high speed, high traffic freeway, and "[i]ts obvious function was to protect motorists on the freeway from the intrusion into their lanes of vehicles crossing the median out of control whether by reason of mechanical or tire failures or other causes unrelated to negligence or by reason of the negligence of their drivers and owners."  (*Id*. at p. 965.)  Though appellants argue the same reasoning applies to a "cross traffic does not stop" sign, they offered no evidence to show that the presence of such a sign could or would have physically prevented Nubani from entering the intersection.  Given the absence of evidence regarding why Nubani failed to stop, the statement from appellants' forensic consultant Jason Droll, Ph.D., that "the presence of additional signage . . . would have increased a driver's likelihood of perceiving and complying with the requirement to stop" was nothing more than speculation.  (See generally *McGonnell v. Kaiser Gypsum Co., Inc.* (2002) 98 Cal.App.4th 1098, 1106 ["An expert's speculations do not rise to the status of contradictory evidence, and a court is not bound by expert opinion that is speculative or conjectural"]; accord, *Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, 1371 ["an expert's speculative and conjectural conclusion that different measures might have prevented an injury cannot be relied upon to establish causation"].)

In the second case relied on by appellants, *Mathews v. State of California ex rel. Dept. of Transportation* (1978) 82 Cal.App.3d 116, the traffic signals at an intersection malfunctioned, with one light stuck on green and the other stuck on red, and the plaintiff was injured when she drove through the green light and collided with another vehicle being driven through the red light.  Declining to find the condition was not dangerous as a matter of law, the court explained that a motorist approaching the green signal would be unaware of the malfunction and "deceptively lulled into a sense of freedom from

13

interference by cross traffic." (*Id*. at p. 121.) Correspondingly, a motorist approaching the red signal would at some point realize the malfunction, and "from exasperation and impatience . . . [be] likely to reduce or abandon caution and increase the risks he is willing to take in entering the intersection against the red light in the face of approaching traffic on the cross street." (*Id*. at p. 122.) Thus, the court concluded the intersection could pose a substantial risk to motorists exercising due care. Here, on the other hand, the lack of a "cross traffic does not stop" sign did not pose such a risk, as the intersection's existing signs required drivers travelling northbound on 70th Street East to use due care to stop before proceeding into the intersection.

Appellants also maintained that evidence showing that the limit line and "stop" pavement markings were degraded raised a triable issue of fact. Photographs showed that the limit line and "stop" pavement markings had faded by the time of the accident, and County employee Larry Dunlop testified that while he could still see the pavement markings it appeared that their retroreflective qualities had dissipated. Dunlop summarized: "I would describe this condition as a severely distressed intersection with allegations and stress and thermal cracks that are tight and it's still a serviceable road, at this point in time due for replacement." Appellants further offered their expert traffic engineer's opinion that the pavement markings did not comply with the specifications set forth in the CMUTCD and that such noncompliance rendered the intersection unsafe.

Again, appellants' position mirrors the plaintiffs' in *Cerna v. City of Oakland, supra*, 161 Cal.App.4th at pages 1348 and 1352, where the court held no triable issue of fact was created by an expert's opinion that the omission of multiple features—including pavement markings delineating a school crosswalk—rendered an intersection a dangerous condition. Moreover, the evidence regarding the condition of the limit line and "stop" pavement markings was insufficient to show a substantial risk of injury. Photographic and testimonial evidence established the markings remained visible.

Though appellants seek to infer from the evidence that the markings were not repainted one year before the accident, the evidence shows otherwise. The County's equipment history records showed a maintenance entry for September 2008 and a notation that the markings were repainted in October 2009. Appellants argue this means there was no repainting in September 2008, but they ignore other evidence showing that the October 2009 entry was not the result of regular maintenance, but rather, documented work performed pursuant to a June 2009 work order. County employee Robert Scharf testified that County maintenance records showed the markings were repainted in September 2008.

Further, though appellants contend the pavement markings failed to comply with the CMUTCD because they were no longer retroreflective, nothing in the CMUTCD requires such markings to be retroreflective. (See CMUTCD, §§ 3A.02 [requiring markings that must be visible at night to be retroreflective], 3B.16 [describing required features of limit lines, omitting any requirement they be visible at night], 3B.19 [describing required features of pavement word and symbol markings, including "stop," omitting any requirement they be visible at night].) Thus, particularly given the undisputed evidence that the stop sign was unobstructed and a functioning streetlight illuminated the intersection, the absence of the pavement markings' reflective quality was minor, trivial or insignificant.

Finally, evidence of the accident rate at the intersection was insufficient to create a triable issue of fact. The County offered evidence that between 2005 and 2010, 5,000,000 vehicles entered the intersection during peak traffic hours and, during that time period, five collisions involving vehicles traveling northbound on 70th Street East and eastbound on Avenue N occurred. That collision rate was lower than the statewide average of 0.33 collisions per million for similar intersections. In response, appellants offered evidence that 11 collisions had occurred during that time period at the intersection. But beyond asserting that ten of the 11 collisions involved "issues related to right-of-way and/or traffic control compliance," appellants offered no evidence to show how the additional collisions were similar to the accident here. Indeed, the evidence

15

showed multiple dissimilarities—including that some collisions resulted from drivers who made improper turns or drivers who stopped at the stop sign but proceeded into the intersection thinking they could beat the vehicles traveling on Avenue N. And importantly, appellants offered no evidence to show whether the condition of the intersection was the same throughout that five-year period as it was at the time of the accident.

"'[I]t is well-settled that before evidence of previous accidents may be admitted to prove the existence of a dangerous condition, it must first be shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question.' [Citation.] Moreover, '[w]hile there must be substantial similarity to offer other accident evidence for any purpose, a stricter degree of substantial similarity is required when other accident evidence is offered to show a dangerous condition; "'the other accident must be connected in some way with that thing.'"'" [Citation.]" (*Mixon v. State, supra,* 207 Cal.App.4th at p. 138.) Absent evidence of similarity—let alone substantial similarity—between the 11 collisions at the intersection and the accident here, the mere occurrence of those collisions failed to create a triable issue of fact as to whether the intersection created a substantial risk of injury when used with due care.

Having found the trial court properly granted summary judgment on the ground that the County negated an essential element of appellants' claim, we need not address the other dangerous condition elements or any statutory exceptions or immunities. (*See Smith v. St. Jude Medical, Inc.* (2013) 217 Cal.App.4th 313, 316, fn. 3; *Jones v. County of Los Angeles* (2002) 99 Cal.App.4th 1039, 1044.)

## DISPOSITION

The judgment is affirmed.  The County is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.