[No. B004501. Second Dist., Div. Six. Nov. 1, 1985.]

ANITA L. WESTBROOKS et al., Plaintiffs and Respondents, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

1204

COUNSEL

Robert F. Carlson, Joseph A. Montoya, Robert L. Meyer, Anthony J. Ruffolo, Ira W. Holroyd, Robert W. Vidor, Spray, Gould & Bowers, J. Jane Fox, Bruce Alan Finck and Susan B. Gans-Smith for Defendants and Appellants.

John A. Wellcome, Christina J. Imre, Pachter, Gold & Schaffer and Thomas F. Overlander for Plaintiffs and Respondents.

OPINION

**ABBE, J.**—Appeal from judgment after jury trial against appellants State of California (State), County of Ventura (County) and Gregory Whitesell (Whitesell), a Deputy Sheriff of Ventura County. The verdict in favor of respondents, the widow and sons of the decedent, Paul Westbrooks, was in the sum of $1.3 million. Respondents brought this action for wrongful death against the State on a theory of the existence of a dangerous condition on the public highway of the State known as state route 118 (SR118) and against the County and Whitesell on the theory of negligently failing to adequately warn the decedent of such dangerous condition. We affirm the judgment against the State and reverse the judgment against the County and Whitesell.

A violent storm with heavy rain and high winds that had struck Southern California continued unabated during the morning of February 10, 1978. Due to the storm, a highway bridge on SR 118 collapsed about 1:45 that morning. The bridge was located approximately 1.3 miles east of the intersection of SR 118 and Balcom Canyon Road, a county road.

The beginning of the collapse of the bridge was observed by Ventura County Deputy Sheriff Connors. Connors radioed a report of the collapse, requesting assistance from the California Department of Transportation (Cal Trans) and the California Highway Patrol (CHP). He put out flares on the

east side of the bridge and radioed the sheriff's office headquarters requesting that a sheriff's unit be set to block access from the west. Ventura County fire department members who had driven across the bridge just before its collapse set out flares on the west side.

Upon receipt of Connors' report, the County notified Cal Trans of the situation and requested that Cal Trans and CHP personnel go to the bridge site. Cal Trans communication center in Los Angeles received two such notifications from the County, one at 1:52 a.m. and one at 2:35 a.m. After receiving the 1:52 a.m. call, the Cal Trans dispatcher clerk in Los Angeles immediately notified the office of the Ventura maintenance station and the Ventura CHP office of the situation.

No Cal Trans personnel nor CHP officer appeared at the scene for the purpose of diverting traffic until 5:45 a.m. At that time a state employee placed road closed signs, barricades and reflectorized barriers at the intersection of SR 118 and Balcom Canyon Road. The Cal Trans Moorpark maintenance yard, where the signs, barricades and barriers were obtained, is about two miles distance from the bridge.

Between 1:45 and approximately 2:30 or 3 a.m. that morning, a county fire crew was attempting to block the western approach to the bridge. Whitesell arrived at approximately 3 a.m. and set up a traffic control at the corner of SR 118 and Balcom Canyon Road. The fire crew left to attend to other emergencies. Whitesell remained at the intersection until after arrival of Cal Trans personnel at 5:45. While he was at the intersection, he testified he was able to divert 50 to 70 vehicles away from the danger.

During the course of the morning two eastbound vehicles went through Whitesell's attempted traffic control. The occupant of the first vehicle was saved as a result of sheriff's deputies on the east side of the bridge throwing flares to the west side. They were notified of the driver's conduct in going through the traffic control by a radio call from Whitesell.

The second vehicle to go through was a milk truck operated by decedent Paul Westbrooks. About 5:30 a.m. Whitesell observed the milk truck approaching his traffic control point from the west. It was dark and raining heavily. The milk truck slowed to about 10 to 15 miles per hour. Whitesell was motioning with a flashlight. The milk truck then accelerated and went around the flares. Whitesell yelled, whistled and thought he was able to bang the side of the truck with his flashlight but the truck continued on. Whitesell stayed at his post to divert other vehicles. Paul Westbrooks drove into the void where the bridge had been and was killed.

In a special verdict the jury found, among other things, the following: (1) SR 118 was in a dangerous condition at the time of the accident in which Paul Westbrooks was killed. (2) Such accident was legally caused by the dangerous condition. (3) The accident occurred in a way which was reasonably foreseeable as a consequence of the dangerous condition. (4) Cal Trans had actual or constructive notice of the dangerous condition a sufficient time prior to the accident so that protective measures could have been taken. (5) The action or inaction by Cal Trans to protect against the risk of injury created by the dangerous condition was not reasonable under the circumstances. (6) Cal Trans was 85 percent liable.

In the claim against the County of Ventura and Whitesell the jury found, among other things, as follows: (1) County assumed the duty of protecting persons such as Paul Westbrooks by guarding SR 118. (2) County was negligent in this undertaking. (3) County was 15 percent liable.

On appeal County contends the trial court erred in refusing to instruct the jury in accordance with the holding in *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137]. County contends it voluntarily attempted to come to the aid of another and it neither increased the risk of harm to that person as a result of its undertaking, nor was there detrimental reliance on it by the other person. We agree with County's contention and hold that as a matter of law it is not liable.

■ The court instructed the jury according to BAJI No. 4.45 that one who is under no duty to care for another but who assumes such duty may be subject to liability to the other by failing to exercise ordinary or reasonable care in the performance of such assumed duty. This was insufficient and incorrect.

The jury should have been instructed that one who, having no initial duty to do so, undertakes to come to the aid of another is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. (*Williams* v. *State of California, supra,* 34 Cal.3d 18, 23; Rest.2d Torts, § 323.)

■ As a general rule, persons, including employees of public entities, have no duty to come to the aid of others. ■ A person who has not created a peril is not liable in tort for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act. (Rest.2d Torts, § 314; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 554, p. 2821.)

This case does not involve such morally outrageous and indefensible conduct in failing to act for the protection of others that could conceivably require a modification of the rule that no duty is imposed to so act even if it could be done easily. Whitesell did not fail to act despite no legally imposed duty to do so even though, in the jury's opinion, he acted in a negligent manner.

Cal Trans is authorized by sections 124 and 125 of the Streets and Highways Code to restrict the use of or close any state highway whenever the department considers such closing or restriction of use necessary for the protection of the public and to notify the public that a state highway is closed or its use restricted by erecting suitable barriers or obstructions, post warnings and notices, place warning devices on such highway and assign a flagman to warn, detour or direct traffic on such highway. Section 127 of the Streets and Highways Code requires the CHP to cooperate with Cal Trans in the enforcement of the closing or restriction of use of any state highway. Vehicle Code section 2410 authorizes California highway patrolmen to direct traffic as conditions warrant.

■ A deputy sheriff is a peace officer whose authority extends to any public offense committed or which there is probable cause to believe has been committed within the political subdivision which employs him. (Pen. Code, §§ 830 and 830.1.) Respondent has not indicated nor have we found any statute imposing upon deputy sheriffs those duties enumerated hereinabove of Cal Trans and CHP.

■ There was no evidence that County personnel in any way increased the risk of harm to users of SR 118 or that either the State or Paul Westbrooks relied upon the County's undertaking to their detriment. In fact, the County's efforts appeared to have saved a number of lives and neither the State nor Paul Westbrooks relied on the County's attempts to divert traffic away from the danger. Had the jury been instructed properly, the County would not have been found liable.

■ The State contends it was entitled to show through the testimony of an expert witness proffered by the County that no dangerous condition of property existed that morning because of the activities of the County deputy sheriff. The County offered the testimony of a human factors psychologist specializing in transportation safety on how people see, hear and perceive things and their reactions thereto for the purpose of showing that an ordinary, prudent driver would have stopped at Whitesell's traffic control point.

Evidence Code section 801 limits the testimony of an expert to an opinion on ". . . a subject that is sufficiently beyond common experience that the

opinion of an expert would assist the trier of fact. . . ." The trial court ruled the proffered testimony inadmissible on the ground that it was an improper subject of expert opinion. The ruling was correct. The proffered testimony was in the form of an opinion by the expert on a matter that is within the common experience of lay jurors. ■ If the jurors would be able to draw a conclusion from the facts testified to as easily and as intelligently as the expert, the opinion testimony of the expert is not admissible. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 124 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].)

■ The significance of the presence of flares, a deputy sheriff and a sheriff's vehicle during a stormy night is within common experience of lay jurors. Certainly there was no abuse of discretion in the trial court's ruling rejecting such testimony. ■ "It is fundamental that a trial judge has wide discretion to admit or reject opinion evidence, and that a court of appeal has no power to interfere with the ruling unless there is an obvious and pronounced abuse of discretion on his part . . . ." (*People* v. *Clark* (1970) 6 Cal.App.3d 658, 664 [86 Cal.Rptr. 106], citing *Kennedy* v. *Reese* (1966) 240 Cal.App.2d 769 [49 Cal.Rptr. 915].)

It would be improper to reverse a jury's verdict on the ground of a refusal to admit expert testimony on a subject of common experience. We will not do so.

■ The State also contends on appeal that the court erred in allowing respondents' expert to testify in rebuttal as to the inadequacy of the traffic control efforts by the deputy sheriff. Even assuming this was error in view of the court's exclusion of the opinion of the human factor psychologist, we do not consider it prejudicial. Liability was established against the State not on the basis of the County's negligence, but on the State's failure to respond at all, or inadequately within a reasonable time after notice of a dangerous condition of its own road. There is no evidence of a reliance by the State on the County's activities nor of an attempt by the State to delegate to County its duty to protect the public from a dangerous condition of the highway.

Although the respondents' expert was not one designated as required by Code of Civil Procedure section 2037, the trial court's finding that the parties had waived the requirements of that section by their actions is supported by the record.

The judgment in the total amount of the verdict is affirmed as against the State. The judgment against the County and Whitesell is reversed and re-

manded with directions to enter judgment in their favor. County and Whitesell shall be entitled to costs on appeal from respondents.

Stone, P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied November 26, 1985.