Filed 9/28/23  Devault v. Telgian Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LORI FOSS DEVAULT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TELGIAN CORPORATION, <br><br> Defendant and Respondent, | D080137 <br><br><br> (Super. Ct. No. 37-2018-00027709-CU-PA-CTL) |
| LORI FOSS DEVAULT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> A.J. PADELFORD & SON, INC., <br><br> Defendant and Respondent. | D080925 <br><br><br><br> (Super. Ct. No. 37-2018-00027709-CU-PA-CTL) |

APPEAL from judgments of the Superior Court of San Diego County, Matthew C. Braner, Judge.  Affirmed.

Law Offices of Nicholas A. Boylan and Nicholas A. Boylan for Plaintiff and Appellant.

Collins + Collins, Michele L. Gamble, Kevin J. Healy and James C. Jardin for Defendant and Respondent Telgian Corporation.

Wood Smith Henning & Berman, Stephen M. Caine; Law Offices of John A. Hauser and Lynne Ann Pearson Houry for Defendant and Respondent A.J. Padelford & Son, Inc.


## I.

## INTRODUCTION

Plaintiff Lori Foss Devault appeals from judgments entered in favor of defendants A.J. Padelford & Son, Inc. (Padelford) and Telgian Corporation (Telgian) after the court granted the defendants' separate motions for summary judgment on her claim for negligence against them. Padelford and Telgian were the general contractor and subcontractor, respectively, on a construction project for a Home Depot store for which construction was completed in 2000. Devault was employed at that Home Depot store in November 2017 when she allegedly injured her head after striking a fire hose rack that was mounted next to solid double doors.

Devault alleged that Padelford and Telgian were negligent in designing and/or installing the fire hose rack in close proximity to a set of double doors. Telgian moved for summary judgment first, arguing that Devault's claim against it was untimely because the defect about which Devault was complaining was a patent defect, as to which a four-year statute of limitations applies to claims against parties who are involved in the improvement of real property pursuant to Code of Civil Procedure[1] section 337.1. Telgian argued in the alternative that the patency of the defect

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

rendered Devault's claim barred under the "completed and accepted" doctrine, as well. The trial court concluded that Telgian had established through undisputed facts that the defect underlying Devault's claim against Telgian was patent as a matter of law, which meant that the claim was untimely under section 337.1 *and* was barred under the "completed and accepted" doctrine. The court therefore granted summary judgment in favor of Telgian. A few months later, Padelford moved for summary judgment on the same grounds, and the court reached the same conclusion, granting summary judgment in Padelford's favor.

The trial court entered separate judgments as to Padelford and Telgian, and Devault appealed from both. We consolidated the appeals for purposes of oral argument and opinion.[2]

On appeal, Devault contends that the trial court erred in concluding that there remain no material facts in dispute as to the patency of the alleged defect regarding the location of the fire hose rack that Devault alleges caused her injuries. In particular, Devault asserts that there remains a factual dispute as to whether the "combination of no-window warehouse doors and close proximity of the fire-hose apparatus (in the design/construction) constituted a latent defect." (Fn. and some underscoring omitted.) Devault contends that the trial court "completely disregard[ed], discount[ed] and/or misinterpret[ed] the expert testimony" she submitted, and that such expert

---

[2]    During the pendency of the appeals, Devault filed an unopposed motion to consolidate the two matters. Although this court initially deferred consideration of Devault's motion to consolidate, on July 14, 2023, we ordered that case Nos. D080137 (*Devault v. Telgian Corporation*) and D080925 (*Devault v. A.J. Padelford & Son, Inc.*) be consolidated under case No. D080137.

testimony established that a dispute of material fact remains to be determined by a jury.

We conclude, as did the trial court, that the deficiency at the heart of Devault's negligence claim is patent as a matter of law. As a result, the four-year statute of limitations set out in section 337.1 requires that any claims against Padelford and Telgian based on such a defect be brought within four years of the completion of construction. Because Devault's claim was brought nearly two decades after the Home Depot store construction was completed, the claim is untimely as to Padelford and Telgian. We therefore affirm the judgments entered in favor of these defendants.

## II.
## FACTUAL AND PROCEDURAL HISTORY

A. *Factual background*

Defendant Padelford was the general contractor for the construction of the Home Depot store in which Devault was working at the time of the alleged injury. Defendant Telgian designed a fire suppression system for the Home Depot store, which included a fire hose rack attached to a wall at the back of the store. Construction on the store, including the fire hose rack, was completed in 2000.

Devault began working at the Home Depot in early 2017; she typically worked 20 hours per week, and sometimes worked as much as 32 to 40 hours per week. Devault "constantly walked past" the fire hose rack while working. The fire hose rack was mounted on a wall next to two solid double doors, both of which were openly visible; Devault disputes that the hazard created by the fire hose rack was readily apparent, however. According to Devault, the "combination defect" of the fire hose rack's location and proximity to "the perimeter of the high-traffic [windowless] doorway" was a hazard "not visibly apparent to a layman."

4

While Devault was working on November 1, 2017, she struck her head on the fire hose rack after coming through the set of doors that were adjacent to the fire hose rack. Devault was injured as a result of her head striking the fire hose rack.

B. *Procedural background*

1. *The origination of the lawsuit and the amended complaint*

In June 2018, Devault brought an action against Cara Nicole Sipan and multiple unnamed Does in which she claimed damages for personal injuries arising out of a June 6, 2016 auto accident on Route 52 in San Diego. Over a year later, on July 9, 2019, Devault filed an amended complaint for damages in which she retained her negligence claim against Sipan, but added Telgian and Padelford as named defendants in connection with a new, distinct negligence claim.[3] As to Telgian and Padelford, Devault alleged that she was working at the Home Depot store in question on November 1, 2017, and, while she was working, she injured her head when she struck it on the fire hose rack. Devault alleged that Padelford was the general contractor who built the Home Depot building, and further alleged that Telgian was the subcontractor responsible for the planning, design, placement and installation of the fire hose rack and/or the windowless doors utilized next to the fire hose rack in the Home Depot store. Devault asserted that Telgian and Padelford were negligent in the plan, design, selection, placement, location, and/or installation of the fire hose rack.

2. *Telgian's motion for summary judgment*

Telgian moved for summary judgment on August 11, 2021, arguing that it was entitled to judgment as a matter of law based on the four-year

---

3    Devault was permitted to amend her complaint in the Sipan lawsuit to allege additional or "successive" personal injuries.

5

limitations period applicable to claims of patent deficiencies in construction provided for in section 337.1. Telgian also asserted that Devault's claim was barred under the "completed and accepted" doctrine.

Devault opposed the motion. In support of her opposition, Devault submitted her own declaration, as well as the declarations of three other individuals—Brad Avrit, John P. (Jack) Diehl, and Nicholas Boylan.[4]

Telgian objected to certain of Devault's evidence. Specifically, Telgian objected on multiple grounds to the entirety of the Diehl and Avrit declarations, as well as to paragraphs 6, 7, and 8 of Devault's declaration.

The trial court heard argument on Telgian's motion for summary judgment on December 10, 2021, and took the matter under submission. The court issued its ruling three days later. In considering the motion for summary judgment, the trial court sustained in full Telgian's evidentiary objections to the declarations of Brad Avrit and John Diehl, but overruled in full Telgian's objections to Devault's declaration.[5] After dispensing with the evidentiary rulings, the court granted Telgian summary judgment. In issuing its ruling, the court concluded that the four-year statute of limitations provided for in section 337.1 applied to Devault's claim against Telgian because the deficiency about which she was complaining was a patent deficiency, as a matter of law, because the fire hose rack and its proximity to

_____

[4]    Boylan is one of Devault's attorneys. Avrit is a "licensed civil engineer" who has "extensive technical and practical experience in conducting safety investigations and analysis of premises." Diehl is an "Architect."

[5]    The court concluded that Avrit's and Diehl's declarations were, ultimately, irrelevant because one attempted to discuss the "unforeseeable risk" of a particular item and the other provided an opinion that the alleged hazard " 'was not and would not be apparent to a layman,' " but the appropriate question was whether the hazard "is 'apparent by reasonable inspection.' "

the door was "obvious." The trial court also concluded, as an alternative ground for granting summary judgment, that the "completed and accepted doctrine" operated to bar Devault's claim against Telgian. Pursuant to the "completed and accepted doctrine," where the defect alleged is not a latent defect, an injured third party may not hold a contractor liable for allegedly negligently completed construction once the construction work has been accepted by the owner of the building. (See *Jones v. P.S. Development Co., Inc.* (2008) 166 Cal.App.4th 707, 712, disapproved of on different grounds in *Reid v. Google* (2010) 50 Cal.4th 512, 532, fn.7 (*Reid*).) The court reiterated that it had determined that the defect alleged in this case is a patent defect, as a matter of law.

In response to Devault's argument that there remains a triable issue of fact as to whether the defect was, in fact, latent because the defect was in the " 'combination of the no-window warehouse door with the location of the unguarded, un-protected metal fire-house apparatus,' " the trial court noted that Devault's statements to the effect that she could not have appreciated the hazard of the doors in combination with the fire hose rack were unavailing, because the issue is not whether she "appreciated the danger," but rather whether the fire hose rack's location vis-à-vis the door was objectively obvious and apparent. Despite having previously sustained Telgian's objections to Devault's experts' declarations, the trial court nevertheless also specifically rejected as speaking to the wrong standard both Avrit's assertion that the combination of no-window doors and the placement of the fire hose rack " 'presented an unforeseeable risk,' " and Diehl's assertion that the " 'danger . . . presented by the location of the fire-hose valve apparatus, in close proximity to the perimeter of the high-traffic doorway . . . was not and would not be apparent to a layman.' " The court

7

noted that the test for patency is instead whether the deficiency alleged is " 'apparent by reasonable inspection.' "

The trial court entered judgment in favor of Telgian on January 3, 2022. Devault filed a timely notice of appeal from the judgment entered in favor of Telgian.

3.    *Padelford's motion for summary judgment*

Approximately two months after the trial court entered judgment in favor of Telgian, Padelford moved for summary judgment on the same grounds as Telgian and argued that issue preclusion compelled the same result, given that Telgian and Padelford "hold[ ] the same posture" in the litigation.

In opposing Padelford's motion for summary judgment, Devault again submitted declarations by Avrit, Diehl, and Boylan, as well as her own declaration. Devault's declaration is identical to the one she submitted in opposition to Telgian's motion for summary judgment. Avrit's and Diehl's declarations are also for the most part identical to the ones they submitted in opposition to Telgian's motion for summary judgment. However, the new declarations include the addition of a single new paragraph. For example, Avrit's new declaration includes the following paragraph:

> "I have read Judge Braner's Order granting summary judgment to Telgian in this case, and I hope the following clarification and/or addition to my opinions are helpful to the Court with respect to summary judgment motion of A.J. Paddelford [*sic*]. Specifically: It is my opinion that the combination hazard described in this declaration was not and would not be apparent to an average consumer and/or an average worker in that specific warehouse environment involved, based on a reasonable inspection by such an average person. It [ha]s been a part of my work and experience for decades to determine whether particular hazards are unreasonably dangerous based on the type of people, the qualifications of the people, the education of the

8

people, and the abilities on the people who will be functioning in the particular environment and the particular circumstances presented, where the injury occurs. This necessarily involves determining whether the injured person is a typical, average consumer, like the Plaintiff here, or the injured person is a sophisticated, knowledgeable, experienced and/or expert person and familiar professional operating in a professional environment as a skilled worker. I employed my decades of experience and training on that point in reaching and expressing my opinion here that an average consumer and/or an average worker functioning in the unique, Home Depot consumer warehouse environment would not be able to see, 'foresee', recognize or be aware of the obscure hazard presented by the combination of conditions presented at the immediate perimeter of the high-traffic warehouse passageway adjacent to the no-window doors."

Diehl's updated declaration includes the exact same language contained in this paragraph from Avrit's updated declaration, with the exception of the final sentence, which includes slight alterations. In Diehl's declaration, his final sentence is as follows (with alterations indicated by the use of strikeouts for removed language and the use of italics for added language):

"I employed my decades of experience and training on that point in reaching and expressing my opinion here that an average consumer and/or an average worker functioning in the unique, Home Depot consumer warehouse environment would not be able to ~~see, 'foresee',~~ recognize or be aware of the obscure hazard presented by the combination of conditions presented at the immediate perimeter of the high-traffic*, two-way* warehouse passageway adjacent to the no-window doors*, upon normal or reasonable inspection*."

Boylan's declaration was also different from the declaration he submitted in opposition to Telgian's motion for summary judgment; however,

9

because Boylan submitted his declarations in connection with his role as an attorney involved in the lawsuit, his declarations were utilized only for the purpose of submitting discovery responses and appellate documents as evidence.

The trial court set a hearing on Padelford's motion for summary judgment for June 24, 2022. Prior to the hearing, the court issued a tentative ruling in which it proposed granting Padelford's motion for summary judgment in full and on the same grounds as the court granted Telgian's motion for summary judgment. The attorneys for both parties submitted on the court's tentative ruling, and the court thereafter confirmed its tentative ruling as its final ruling without further argument from the attorneys.

In issuing its ruling, the trial court concluded that the four-year statute of limitations provided for in section 337.1 also applied to Devault's claim against Padelford because the deficiency about which she was complaining was a patent deficiency, as a matter of law. As the court had concluded in Telgian's prior summary judgment proceeding, it again concluded that the fire hose rack and its proximity to the door was an "obvious" deficiency. Additionally, given the patency of the defect, the "completed and accepted doctrine" operated to bar Devault's claim against Padelford.

The trial court again dismissed certain contentions in Devault's experts' declarations to the effect that they were suggesting that the defect was, in fact, latent because the defect comprised the " 'combination of the no-window warehouse door with the location of the unguarded, un-protected metal fire-house apparatus.' " The court also reiterated that Devault's statements to the effect that she could not have appreciated the hazard of the doors in combination with the fire hose rack were unavailing, because the issue is not whether she "appreciated the danger," but rather whether the fire hose rack's location vis-à-vis the door was objectively obvious and apparent.

10

The trial court entered judgment in favor of Padelford on July 15, 2022.

Devault filed a timely notice of appeal from the judgment entered in favor of Padelford.

III.

DISCUSSION

A.    *Summary judgment standards*

We review de novo an order granting a motion for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)

In performing our independent review, we apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159.) "We then examine the moving party's motion, including the evidence offered in support of the motion." (*Ibid.*) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); *Aguilar, supra*, 25 Cal.4th at p. 850.) The expiration of the applicable statute of limitations is one such complete defense. (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.) A defendant moving for summary judgment based on the affirmative defense of the statute of limitations carries its burden by presenting evidence establishing that the plaintiff's claim is time barred. (*The Police Retirement System of St. Louis v. Page* (2018) 22 Cal.App.5th 336, 340 (*Police Retirement System*).)

Only if the defendant's moving papers make a prima facie showing that justifies a judgment in the defendant's favor does the burden shift to the plaintiff to make a prima facie showing of the existence of a triable issue of

11

material fact. (§ 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.) In the context of a statute of limitations defense, if the defendant has carried its burden, then the plaintiff must submit evidence that would allow a "reasonable trier of fact [to] find in plaintiff['s] favor on the statute of limitations issue." (*Police Retirement System, supra*, 22 Cal.App.5th at p. 340; *Aguilar, supra,* 25 Cal.4th at p.850 ["There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof"].)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a *reasonable* trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, italics added, fn. omitted.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

B.    *The law regarding limitations on claims involving patent and latent defects*

Section 337.1, subdivision (a) provides that a cause of action based on a "patent" deficiency in the construction of an improvement to real property

12

must be brought within four years of the substantial completion of the improvement.[6]

Section 337.1 exists to "provide a final point of termination, to protect some groups from extended liability." (*Sevilla v. Stearns–Roger, Inc.* (1980) 101 Cal.App.3d 608, 611.) Section 337.1 applies only to a specific class of defendants who are associated with the design and construction of real property improvements. The statute promotes development and construction by "free[ing] those associated with it from the specter of lawsuits in the distant future. Those who fear venturing into such activities will be less deterred when a ceiling is placed on the period for which they can be held liable. The concept of promoting construction tends to harmonize with the public policy favoring the full enjoyment and use of real property." (*Wagner v. State of California* (1978) 86 Cal.App.3d 922, 929–930.) "A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise." (*Regents of University of California. v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 633, fn. 2, superseded by statute on

---

[6] Section 337.1, subdivision (a) states: "Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following: [¶] (1) Any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to, or survey of, real property; [¶] (2) Injury to property, real or personal, arising out of any such patent deficiency; or [¶] (3) Injury to the person or for wrongful death arising out of any such patent deficiency."

different grounds as stated in *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 375, fn. 9.)

Importantly, the statutory framework does not leave a plaintiff wholly without a remedy for injuries caused by defects.  Although section 337.1 exists to limit the liability of a class of defendants engaged in the *construction* of real property improvements, subdivision (d) of the provision expressly prohibits another class of defendants from using it as a defense:  "The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the [*sic*] control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action."  Thus, after the statutory limitation period elapses, only those construction industry defendants who are specifically identified in the statute are freed from responsibility for harm from patent deficiencies, while responsibility for harm resulting from those deficiencies remains in a "person in actual possession or control" (§ 337.1, subd. (d)) of the real property improvement.  (*Tomko Woll Group Architects, Inc. v. Superior Court* (1996) 46 Cal.App.4th 1326, 1337 (*Tomko*).)[7]

Subdivision (e) of section 337.1 defines a "patent deficiency" as "a deficiency which is apparent by reasonable inspection."  Thus, "[a] patent defect can be discovered by the kind of inspection made in the exercise of ordinary care and prudence, whereas a latent defect is hidden and would not

_____

[7]    "The rational basis for this legislative [decision to permit continued liability for a person in actual possession or control of a building while limiting the time construction industry defendants may be held liable] is that such a person will have control over the property at the time of the accident, will be in the best position to discover a defect and to prevent injury, and will be likely to have insurance."  (*Tomko, supra*, 46 Cal.App.4th at p. 1337.)

14

be discovered by a reasonably careful inspection." (*Delon Hampton & Associates, Chartered v. Superior Court* (2014) 227 Cal.App.4th 250, 255 (*Delon Hampton*).) "In the context of a patent defect, the word 'patent' ' "refers to the patency of danger and not merely to exterior visibility." ' [Citation.]" (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1470 (*Sanchez*).)

" 'The test to determine whether a construction defect is patent is an objective test that asks "whether the average consumer, during the course of a reasonable inspection, would discover the defect. . . ." [Citations.] This test generally presents a question of fact, *unless the defect is obvious in the context of common experience*; then a determination of patent defect may be made as a matter of law (including on summary judgment). [Citations.]' [Citations.]" (*Delon Hampton, supra*, 227 Cal.App.4th at p. 255, italics added; see *Sanchez, supra*, 47 Cal.App.4th at pp. 1470-1471 [a danger is "patent as a matter of law" where "it would be discovered by the inspection an owner would make in the exercise of ordinary care and prudence"]; *Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962, 970 (*Neiman*) [alleged defect of failure to place contrast stripes on stairs is " 'patent as a matter of law; it would be discovered by the inspection an owner would make in the exercise of ordinary care and prudence' "].)

C.    *Analysis*

    1.    *Telgian*

        a.    *Evidentiary issues*

Although Devault does not mention the trial court's evidentiary rulings in its briefing, we must begin by addressing what evidence is to be considered on appeal from the granting of summary judgment. Important for our purposes is the fact that the trial court sustained what appears to be *all* of Telgian's objections to the Avrit and Diehl declarations, which included

15

objections to portions of these declarations made on multiple grounds, as well as multiple objections made to the entirety of the declarations.[8]

Devault does not specifically address the trial court's evidentiary rulings in her opening brief, and, as a result, she has forfeited any argument that the trial court erroneously sustained Telgian's objections. (See, e.g., *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) Rather, and apparently operating under the incorrect assumption that the trial court did not exclude the *entirety* of her two experts' declarations, Devault does seem to take issue with a brief portion of the trial court's order in which the court specifically indicated that the experts' declarations failed to comment on the relevant question in the case. Devault contends that the trial court "was wrong to disregard, misinterpret and deem 'irrelevant' the expert testimony." (Capitalization and boldface omitted.) However, Telgian's evidentiary objections were made on multiple grounds, not solely relevance grounds, and the court did not limit its sustaining of the evidentiary objections to lack of relevance. Because the trial court sustained all of Telgian's objections to the Avrit and Diehl declarations and did not specify only lack of relevance as supporting its exclusion of the evidence, the absence of any argument as to why such rulings were in error constitutes forfeiture of any further claim that the evidence should have been admitted. As a result, we have no occasion to consider that evidence. (See *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286 [In evaluating whether the standards for granting summary judgment have been satisfied, we " ' "consider[ ] all the evidence before the trial court *except evidence to which an objection was made and sustained*" ' " (italics added)].)

---

8 The trial court stated, "Telgian Corporation's Objections to [the] Declaration[s] of Brad Avrit and Jack Diehl are SUSTAINED."

16

b.   *Telgian carried its initial burden to present evidence that the danger posed by the asserted defect is patent and that the statute of limitations on a claim against it has run, and Devault cannot show that there remains a triable issue of material fact*

The record demonstrates that Telgian met its initial burden to present evidence that the danger posed by the asserted defect is patent and that the four-year statute of limitations under section 337.1 has elapsed.

It is undisputed that the completion date for the Home Depot store was February 24, 2000. Since section 337.1 " 'fixes the point at which the period of limitations begins to run at the completion of construction and not the accrual of any cause of action resulting therefrom' " (*Tomko, supra*, 46 Cal.App.4th at p. 1334, italics omitted), any cause of action arising from a patent defect would have had to have been brought against Telgian by February 24, 2004.

Because Devault brought suit against Telgian more than 15 years after the statute of limitations elapsed for claims arising from *patent* defects, the pertinent question for purposes of Telgian's motion for summary judgment is, therefore, whether the defect about which Devault complains was a patent defect. With respect to this question, our review of the record establishes that Telgian submitted undisputed evidence demonstrating that the defect at issue is a patent defect. Specifically, Telgian relied on Devault's deposition testimony and photographic evidence to demonstrate the patency of the defect. Devault acknowledged in her deposition that she had observed both the fire hose rack and the windowless doors, which are located close proximity, and she confirmed that photographs introduced as an exhibit at her deposition reflected the doors and fire hose rack as she encountered them on November 1, 2017. The photographic evidence demonstrates that the fire hose rack was placed on the wall that also houses two double doors, and that

17

the fire hose rack is in close proximity to those doors. Telgian also submitted a photograph demonstrating how far from the wall the fire hose rack protrudes. There is no dispute that the fire hose rack itself was plainly visible and would have been discovered by an average person in the course of a reasonably careful inspection.

Devault nevertheless contends, however, that Telgian failed to meet its burden because its evidence demonstrated only that the fire hose rack, by itself, "could be considered open and obvious," while it did not submit evidence that the "combination of the location of the fire-hose apparatus with the immediately adjacent no-window doors . . . constituted an open and obvious, i.e., patent, hazard." (Some underscoring omitted.) We disagree.

As to the *proximity* of the fire hose rack to the doorway and the depth of its protrusion from the wall to which it is attached—i.e., the "combination" of the doorway and the attached fire hose rack—the undisputed evidence shows that the fire hose rack "is located adjacent to two no-window doors," and that "the distance of the fire hose apparatus [is] 4 inches to the right of the no-window doors and protrud[es] 15-5/8 inches from the wall." The fact that a 15 and 5/8 inch protruding metal structure was placed merely 4 inches from two double windowless doors is open and readily observable with the naked eye. So, too, is the *danger* that such an object would pose to any individual walking through the door; the hazard resulting from the placement of the fire hose rack in such proximity to the doorway is apparent and obvious upon reasonable inspection by the average consumer. Certainly, it is within the common experience of human beings that a large metal fire hose rack of more than 15 inches in depth that is mounted immediately adjacent to a doorway (and thus immediately adjacent to the path of travel through that doorway) would present a danger to someone on that path should that individual for any reason veer off course or be caused to veer off course. The evidence

18

Telgian put forth thus made it clear that the asserted defect—i.e., the fact that the fire hose rack was placed too close to the door frame of doors that did not include windows—was "obvious and apparent to any reasonably observant person." (*Sanchez, supra*, 47 Cal.App.4th at p. 1470.)  In other words, Telgian's evidence demonstrated that the defect was patent as a matter of law.

Our conclusion is consistent with cases in which courts have determined that other defects are patent as a matter of law, as well, given the nature of the danger associated with these defects as being a matter of common experience.  For example, the absence of a fence around a swimming pool has been held to be a patent defect.  (See *Mattingly v. Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506, 510–511 (*Mattingly*) ["[t]he swimming pool and the dangers attendant thereto as they relate to the absence of fencing are matters of such common experience that assuming, arguendo, the absence of a fence constitutes a deficiency in our situation, it is a patent deficiency"].)  Raised paving stones on a patio that are visible to pedestrians have been determined to be a patent defect as a matter of law. (*Tomko, supra*, 46 Cal.App.4th at p. 1339 ["Pavement, and the dangers attendant to it, are matters of such common experience that a visible defect substantial enough to cause a pedestrian to trip and fall constitutes a patent defect."].)  Similarly, the defective construction of a landing that allowed water to pool on the landing and to drain into an office was held to be a patent defect as a matter of law. (*Sanchez, supra*, 47 Cal.App.4th at pp. 1470–1471.)

Defects involving stairs and corresponding guardrails have also been found to be patent as a matter of law.  For example, in *Neiman, supra*, 210 Cal.App.4th at pages 971-972, the lack of contrast marking stripes on stairs as required by the plans for the theatre and by the California Building

19

Standards Code was an " 'obvious and apparent' condition," and was therefore a patent defect.  Similarly, too much space between guardrails is a patent defect because "the spacing of the rails was obvious, and the dangers attendant to climbing through guardrails on a catwalk are . . . a matter of common experience."  (*The Luckman Partnership, Inc. v. Superior Court* (2010) 184 Cal.App.4th 30, 36.)  Beyond this, the alleged defects of a " 'too low' " banister and a " 'too narrow' " stairwell at a rail station were determined to be patent defects on summary judgment.  (*Delon Hampton, supra*, 227 Cal.App.4th at p. 256 ["The height of the banister and the width of the stairwell are not hidden.  They are open and apparent defects, and the danger of ascending or descending stairs is a matter of common experience."].)

Devault contends that *Merrill v. Buck* (1962) 58 Cal.2d 552 (*Merrill*) should control here and argues that application of *Merrill* demonstrates that there is a triable issue of material fact that remains.  In *Merrill*, a tenant had just moved into an apartment, and on her first day there she opened an unmarked door in a central hallway believing it to be a closet.  (*Id.* at p. 556.)  The tenant took a step forward and fell down a stairway that led to a basement, which caused her to suffer significant injuries.  (*Ibid.*)  The tenant sued the landlord and her realtor, alleging that they had failed to warn her of the dangerous condition of a steep staircase with no handrail being placed behind the door—a condition of which they were both aware when they had showed her the property during a pre-move-in inspection.  (*Ibid.*)  The landlord and realtor had not only failed to inform the tenant that there was a staircase behind the door, but they had never even informed her that the apartment had a basement.  (*Ibid.*)  In this context, the Supreme Court stated that " 'patent' *in the test of duty to warn* refers to the patency of danger and not merely to exterior visibility."  (*Id.* at p. 558, italics added.)

20

Apparently attempting to analogize the danger posed to a new tenant by the condition of a nonvisible stairway "hidden" behind a hallway door to the "mounting of a metal fire-hose apparatus, lying immediately behind a no-window door" (underscoring omitted), Devault contends that the "danger" posed by the fire hose rack was not " 'visible' " to "an 'average' worker." However, Devault's claim for negligence is not based on an assertion that the general contractor and subcontractor had a *duty to warn* her of the hazard posed by the defect. Rather, she is claiming negligence on the part of the contractor and subcontractor *in the construction of a building* that was completed 17 years before her injury ever occurred. For this reason, *Merrill* does not provide relevant authority for purposes of this action.[9]

Therefore, to the list of defects that courts have determined to be patent deficiencies as a matter of law for purposes of section 337.1 and or purposes of the "completed and accepted" doctrine, we now add the asserted defect of a visible fire hose rack placed "too close" to a set of windowless doors through which store employees make ingress and egress. Based on the

---

[9] Indeed, this court has not found a single case, published or not, citing to *Merrill, supra*, 58 Cal.2d 552, in the context of review of a judgment entered after a trial court determined that a claim was *untimely under section 337.1* due to the patency of the alleged defect. Nor have we found a single case, published or not, citing to *Merrill* in the context of review of a judgment entered after a trial court determined that a negligence claim against a builder was barred by the "completed and accepted doctrine," the other basis for the trial court's summary judgment ruling in this case. Although Devault suggests that *Merrill* has been "used . . . as a basis for the reversal of summary judgment," it is clear from a review of the single published case cited by Devault that *Merrill* has been cited and relied on only in the context of a case involving a claim for a failure to warn, *not* claims for negligence in construction (see *Hall v. Rockcliff Realtors* (2013) 215 Cal.App.4th 1134, 1141 [holding that a real estate agent has a duty to notify visitors of marketed property of concealed dangerous conditions of which the agent has actual or constructive knowledge]).

evidence presented by Telgian, the closeness of the fire hose rack to the doorway that created a hazard is a matter of common experience and would be "obvious and apparent to any reasonably observant person" (*Sanchez, supra*, 47 Cal.App.4th at p. 1470).

In sum, the trial court did not err in concluding that Telgian carried its burden of showing that the defect was patent as a matter of law. There is simply no evidence Devault could have submitted that would allow a reasonable trier of fact to conclude that the defect alleged here was latent, even if her expert declarations had not been excluded by the court. The danger posed by the placement of the fire hose rack in relation to the windowless doors here is a danger that the average person would be able to ascertain as matter of common experience, and one that no reasonable person could conclude was hidden.

2.    *Padelford*

a.    *Evidentiary issues*

Padelford, like Telgian, made multiple objections to the Avrit and Diehl declarations submitted by Devault in support of her opposition to its motion for summary judgment. Padelford objected to the declarations in full, and also separately objected to specific statements made by Avrit and Diehl in the declarations. However, unlike how the court handled Telgian's evidentiary objections to the experts' declarations, with respect to Padelford's evidentiary objections, the court made no rulings.[10] In such a circumstance, we must

---

[10]    Although the trial court did make ambiguous statements in its order that suggest that the court determined that certain statements made by Avrit and Diehl in their declarations "do not address the precise issue in this motion" and were thus "irrelevant," the court did not at any point specify that it was either overruling or sustaining Padelford's evidentiary objections, nor did it specify that it was not admitting the evidence in the experts' declarations.

22

presume that the trial court overruled Padelford's objections and must therefore "view[ ] the objectionable evidence as having been admitted into evidence," because such an approach "is consistent with section 437c, subdivision (c), requiring the trial court to consider all the evidence except that to which objections were made *and sustained*." (*Reid, supra*, 50 Cal.4th at p. 534, italics added.)

On appeal, however, Padelford contends that the Avrit and Diehl declarations are "irrelevant to create a triable issue of fact regarding what a reasonable person might perceive" (boldface and some capitalization omitted). Padelford argues that the expert declarations were irrelevant because expert opinion was not necessary to assist the court or a trier of fact in appreciating whether the defect about which Devault complains in this action was patent or latent.[11]

In *Reid, supra*, 50 Cal.4th at pages 531–532, the Supreme Court held that a party may preserve its evidentiary objections on appeal, despite the trial court's failure to rule expressly on those objections, so long as the party

---

[11] Padelford's position is that we should conclude that the trial court did, in fact, "sustain[ ]" Padelford's objections to the Avrit and Diehl declarations "in the minute order [through] the Court's statements" to the effect that the experts' "opinions were, in fact, immaterial and 'irrelevant.' " We disagree with Padelford's suggestion that the court "sustained" the evidentiary objections to the expert declarations. Although we agree with Padelford that the trial court made certain equivocal statements regarding the experts' declarations, we ultimately conclude that the trial court engaged with the declarations on their merits and found them to be insufficient to create a triable issue of material fact, but not that the court made evidentiary rulings that the declarations were, in fact, inadmissible. We therefore interpret Padelford's argument in this regard as one urging our review of the admissibility of the experts' declarations with respect to the issue of the latency or patency of the claimed defect, even though Padelford frames the argument as one encouraging our affirmance of the trial court's purported evidentiary rulings (that we conclude it did not make).

23

makes such objections in writing before the hearing or orally at the hearing. It is thus clear that Padelford's written evidentiary objections to the Avrit and Diehl declarations operated to preserve those objections, and we may consider on appeal whether such objections are well-taken.

The *Reid* court also cited with approval the appellate court's approach in considering and reviewing de novo the defendant's evidentiary objections as to which no trial court rulings had been made. (*Reid, supra*, 50 Cal.4th at p. 535 [affirming evidentiary determinations made by reviewing court and declining to remand for trial court to make evidentiary determinations where "the Court of Appeal reviewed [the defendant's evidentiary objections] de novo, consistent with the general standard of review applicable to summary judgment rulings, that any doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion"].) We therefore take that same approach here and review de novo Padelford's evidentiary objections that the Avrit and Diehl declarations were inadmissible as irrelevant and not the subject of proper expert testimony to the extent that the experts asserted opinions about the inability of a "layperson" to anticipate the danger posed by the proximity of the fire hose rack to the windowless doors.

Expert witness testimony is limited to an opinion on "a subject that is sufficiently beyond common experience [so] that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801.) When the proffered testimony regards a matter within the common experience of lay people and the fact finder can draw a conclusion from the facts as easily as the expert, the expert testimony is inadmissible. (*Westbrooks v. State of California* (1985) 173 Cal.App.3d 1203, 1210 (*Westbrooks*).)

As we have already indicated in our previous discussion, the danger posed by a large metal fire hose rack that has been placed near solid doors

24

and that protrudes more than a foot from that wall falls within common experience, and lay people are capable of assessing danger of such a nature. (See, e.g., *Mattingly, supra*, 109 Cal.App.3d at pp. 510–511 [danger from absence of fence around swimming pool falls within common experience]; *Tomko, supra*, 46 Cal.App.4th at p. 1339 [dangers associated with pavement are matters of common experience]; *Sanchez, supra*, 47 Cal.App.4th at pp. 1470–1471 [danger from defect in landing causing water to pool was matter of common experience]; cf. *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 732 [no need for expert opinion to establish height differential defect in sidewalk was trivial; "It is well within the common knowledge of lay judges and jurors just what type of a defect in a sidewalk is dangerous"]; *Westbrooks, supra*, 173 Cal.App.3d at p. 1210 ["The significance of the presence of flares, a deputy sheriff and a sheriff's vehicle during a stormy night is within common experience of lay jurors"].) Therefore, the opinions provided by Avrit and Diehl do not regard subject matter that extends beyond common experience, rendering them irrelevant and, consequently, inadmissible. (See *Westbrooks*, at p. 1210.)

> b. *Padelford carried its initial burden to present evidence that the danger posed by the asserted defect is patent and that the statute of limitations on a claim against it has run, and Devault has not and cannot show that there remains a triable issue of material fact as to this defense*

Just as Telgian did before it, Padelford presented undisputed evidence that the completion date for the Home Depot store was February 24, 2000. Like Telgian, Padelford also submitted undisputed evidence demonstrating that the defect at issue is a patent defect, including Devault's deposition testimony and photographic evidence to demonstrate the patency of the defect. Again, Devault acknowledged in her deposition that she had observed both the fire hose rack and the windowless doors, and she confirmed that

25

photographs introduced as an exhibit at her deposition reflected the doors and fire hose rack, and their proximity to one another, as she encountered them on November 1, 2017. As we previously explained in part III.C.1.b., *ante*, the photographic evidence demonstrates that the fire hose rack was attached on a wall that also houses two double doors and was placed exceedingly near to those doors. The photographic evidence also demonstrates how far out the fire hose rack protrudes from the wall. Again, the fact that a large, protruding metal structure was placed within inches from two double windowless doors is an open and readily observable danger to those who walk through the pathway of those doors. The danger posed by the location of the fire hose rack—i.e., its close proximity to the doorway—is a matter of common experience, such that anyone observing it could reasonably ascertain the risk from walking too near to it.

The analysis that we applied with respect to our review of the trial court's granting of summary judgment in favor of Telgian applies equally here. And we therefore conclude that Padelford, like Telgian before it, carried its burden of showing that the defect was patent as a matter of law. Again, no reasonable trier of fact could conclude that the defect about which Devault is complaining was latent. Instead, the danger posed by the placement of the fire hose rack in relation to the windowless doors here is a danger that the average person would be able to ascertain as matter of common experience, and one that no reasonable person could conclude was hidden. Because we conclude that the alleged defect is a latent defect as a matter of law, any claim against Padelford would have had to have been brought within four years of the completion of the Home Depot building's construction. Devault's action against Padelford, brought almost two decades after completion of the building, is therefore untimely.

26

## IV.

## DISPOSITION

The judgment of the trial court in favor of defendant Telgian is affirmed, as is the judgment of the trial court in favor of defendant Padelford. The defendants are entitled to costs on appeal.

HUFFMAN, Acting P. J.

I CONCUR:

CASTILLO, J.

BUCHANAN, J.,

I concur in the result reached by the majority, but on slightly different grounds. The majority rightly recognizes that the word "patent" in this context " 'refers to the patency of danger and not merely to exterior visibility.' " (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1470 (*Sanchez*).) The majority also notes that a defect may be found patent as a matter of law if it is obvious in the context of common experience. (*Delon Hampton & Associates, Chartered v. Superior Court* (2014) 227 Cal.App.4th 250, 255.) On this record, however, I do not believe we can conclude as a matter of law that the proximity of the firehose equipment to the doors was an obvious danger in the context of common experience.

The firehose equipment was mounted on the wall off to the side of the double doors in a position that would not obstruct the normal path of anyone passing through the doors. There is nothing about the condition of the property that created an obvious danger of someone veering off the normal path and colliding with the apparatus. Although the equipment and its location were visible and obvious, I do not agree that its *danger* would have been obvious—at least not as a matter of law. It probably never occurred to anyone that the firehose equipment was dangerously close to the doors. One would not necessarily expect someone to swerve sideways out of the ordinary line of travel and into the firehose equipment mounted on the wall. If this were the only theory for summary judgment, I believe it would at least present a triable issue of material fact.

I concur in the result, however, because I conclude that Devault's claim is barred by the completed and accepted doctrine. When a contractor completes work that is accepted by the owner, the contractor is not liable to third parties injured as a result of the condition of the work, even if the

contractor was negligent, unless the defect in the work was latent or concealed.  (*Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962, 969.) " 'The rationale for this doctrine is that an owner has a duty to inspect the work and ascertain its safety, and thus the owner's acceptance of the work shifts liability for its safety to the owner, provided that a reasonable inspection would disclose the defect.' " (*Ibid*.)  For purposes of this doctrine, a danger is "patent as a matter of law" if "it would be discovered by the inspection *an owner* would make in the exercise of ordinary care and prudence." (*Sanchez, supra*, 47 Cal.App.4th at pp. 1470–1471, italics added.) Thus, the question is not whether someone in the injured person's position would have discovered the defect; it is whether the *owner* would have discovered the defect by a reasonable inspection.

Devault's own evidence established that the defect would have been discovered in a reasonable inspection by the owner.  In opposition to both summary judgment motions, Devault submitted a declaration from her expert Brad Avrit stating that: (1) the alleged defect was that the fire hose apparatus was installed two feet closer to the doors than shown in the designs (according to the testimony of PMK witness Tracey Bellamy); and (2) "[a]lthough the Defendant[s] did not install the fire hose apparatus themselves, a reasonable inspection during or after the installation would have identified the unsafe condition of the location of the fire hose valve."[1]

---

[1]	Although the trial court excluded Avrit's declaration in the Telgian motion proceedings, Devault asserted these same facts in her statement of undisputed facts in opposition to the Telgian motion.  Moreover, at least this portion of Avrit's declaration should have been admitted and considered because it was directly relevant to the patent defect issue; it applied the correct legal standard for a patent defect; and it was based on a proper foundation, specifically the testimony of PMK Tracey Bellamy that the

For purposes of the completed and accepted doctrine, Devault's evidence that a reasonable inspection would have disclosed the allegedly unsafe deviation from the design plans makes the defect patent as a matter of law.  (*Sanchez, supra*, 47 Cal.App.4th at pp. 1470–1471.)  Devault does not contest any of the other elements of the doctrine.  Accordingly, I concur in the result on the basis that Devault's negligence claim is barred by the completed and accepted doctrine.

BUCHANAN, J.

---

firehose equipment was installed two feet closer to the doors than shown in the designs.